HOLLINS McKIM, Survivor of WILLIAM and ISAAC McKIM, Partners, trading under the name of McKIM & CO. *vs.* JOHN GLENN, Trustee of The NATIONAL EXPRESS AND TRANSPORTATION COMPANY.

*Corporation—Liability of Assignor and Assignee of Stock—Assessment—Code of Virginia of 1860.*

Although stock may be purchased for a customer by brokers, yet if they choose to treat it as their own, and to make it so appear on the books of the corporation, they assume the liability of stockholders, as between themselves and the corporation, or those claiming through it, and they will not be heard to deny the liability attaching to such relation.

All persons becoming stockholders in a corporation must be conclusively presumed to have contracted with reference to, and assumed

all the liability prescribed by, the law of the domicil of the corporation.

While under the Code of Virginia of 1860, an assignment of the stock of a corporation, may operate a complete transfer of title as between assignor and assignee, it does not release the assignor from his liability, as stockholder, to the company to pay for the stock; but he remains liable not only for past assessments, but for any future assessments upon the stock, though the assignee of the stock becomes liable also.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*J. Alexander Preston,* and *John H. Thomas,* for the appellant.

*Charles Marshall,* for the appellee.

*John Howard,* of counsel for the appellee, filed a brief.

ALVEY, C. J., delivered the opinion of the Court.

This is another of the many cases that have grown out of the failure, and the proceedings to wind up the affairs, of the National Express and Transportation Company, a corporation created by the law of the State of Virginia. The action was brought by the plaintiff, the present appellee, as trustee, acting under the decree of the Chancery Court of the City of Richmond, Virginia, against the defendant, the present appellant, as sole surviving partner of the banking house of McKim & Company, who are alleged to have been shareholders of the stock of the National Express and Transportation Company, prior to the time of the general assignment of that company for the benefit of its creditors.

McKim *vs.* Glenn, Trustee.

The deed of assignment was made on the 20th of Sept., 1866; and the decree, under which the plaintiff derives his authority, was passed on the 14th of December, 1880. By that decree an assessment of thirty per cent. of the par value of the stock of the company was directed to be made and collected, and the plaintiff, as trustee, was directed to collect the same, by suit or otherwise, for the payment of the debts of the company ascertained to be due and owing. For a fuller statement of the proceedings under which the plaintiff derives his authority, reference can be had to the cases of *Glenn, Trustee vs. Williams,* 60 *Md.,* 93, and *Glenn, Trustee vs. Howard and Savage,* 65 *Md.,* 40.

To the declaration of the plaintiff the defendant pleaded 1st, That he never was indebted as alleged; 2nd, That he never promised as alleged; and, 3rd, That he was not a holder of stock as alleged. Issue was joined on these pleas, and the case was tried before the Court without the aid of a jury.

On the trial, the facts were brief, and not really controverted; and those that are material to the propositions involved on this appeal, may be stated thus: The defendant was a member of the firm of McKim & Company, and is now the only surviving member of the firm as it was constituted in 1866: That on the 6th of June, 1866, there were transferred to that firm, on the books of the National Express and Transportation Company, by L. P. Bayne, fifty shares of the capital stock of that company, and a certificate was thereupon issued for the fifty shares to McKim & Company, on the 8th of June, 1866: That this certificate of stock was delivered to McKim & Company, and they receipted for the same, on the 12th of July, 1866; and, on the same day, a power of attorney to transfer these shares was signed by McKim & Company, on the back of the certificate, and the transfer was made to Harrison, Garth and Company, on the books of the corpora-

tion, by the attorney named in the power, and the certifi-- cate was surrendered and cancelled. It also appears, that on the stock ledger of the Express Company, McKim and Company are credited with fifty shares of stock, trans- ferred from L. P. Bayne, on the 6th of June, 1866; and, of the same date, with the payment of a requisition on these shares, of $250.

The defendant, on his own part, testified, that McKim and Company bought the stock as brokers, on commission, for Harrison, Garth and Company, who proposed selling it soon, and that the stock certificate was left at the com- pany's office by the brokers from whom McKim & Com- pany bought it; that it was put in the name of McKim and Company, and by them assigned, to keep the company's books in shape: that McKim & Company never had any interest in the stock, never owned it, and never had the certificate of stock in their possession, except for the pur- pose of making the assignment. That witness had no re- collection in regard to the payment of any assessment on the stock; but that, if any such assessment was paid, it was paid for account of the purchaser.

On this proof, the Court was asked by the defendant to rule, as matter of law, by which the verdict should be found, the two following propositions:

1st. That if the defendant purchased the fifty shares of stock as a broker, and the same were transferred to him on the books of the company, without authority from the defendant, and that he never was the owner of the stock, then the plaintiff could not recover.

2nd. That if the stock was sold by the defendant, and transferred to Harrison, Garth & Company, on the 12th of July, 1866, then the defendant was not liable for the assessment made under the decree of the Chancery Court of Virginia, referred to in the declaration, and given in evidence on the trial.

The Court below refused to affirm either of these propositions, as applicable to the case, and the judgment was rendered for the plaintiff.

1. With respect to the first of these prayers, we think the Court below was clearly right in rejecting it. To have affirmed it as applicable to the case, would have required the Court to disregard all the evidence in the cause, both on the part of the plaintiff and of the defendant. That the stock was transferred on the books of the corporation to the name and apparent ownership of McKim & Company, is not only shown by the books of the corporation, but is admitted by the defendant. The defendant admits that the certificate of stock, No. 865, was issued to and in the name of his firm, and that they afterwards endorsed on the back of it a power of attorney to have the stock assigned to Harrison, Garth and Company; thereby accepting, and, by the same act, affirming the correctness of the certificate, which evidenced the fact that the stock stood in their name on the books of the corporation. He says, however, that his firm purchased the stock as brokers, on commission, and that the shares of stock were transferred to their name in order to keep the books in shape. However that may have been, there is not the slightest foundation in the proof for asking the Court to declare that the stock had been transferred to their name on the books of the corporation, without authority. Nor does the evidence show that the name of their principal was disclosed at the time of the transfer of the stock to their name as owner thereof on the books of the company, and the certificate taken therefor, which was afterwards endorsed by them. To all appearances they acted and dealt with the stock as owners, and not as mere agents; and the officers of the corporation, manifestly, dealt with them only in their character as owners of the stock. And though the fact may be that the stock was purchased by McKim & Company for a customer, yet, as they chose to

treat the stock as their own, and so to make it appear upon the books of the corporation, they assumed the liability of stockholders, as between themselves and the corporation, or those claiming through the corporation, and they cannot be heard to deny the liability that attached to that relation. *Higgins vs. Senior,* 8 *M. & W.,* 834; *Deslandes vs. Gregory,* 2 *El. & E.,* 602; *Turnbull vs. Payson,* 95 *U. S.,* 420; *Hammond vs. Straus,* 53 *Md.,* 15; *Magruder vs. Colston,* 44 *Md.,* 349; *National Bank vs. Case,* 99 *U. S.,* 628, 631, and cases there cited in the opinion of the Court. The first prayer, therefore, was properly rejected.

2. With respect to the second proposition asked to be affirmed by the Court, that the transfer of the stock by McKim & Company to Harrison, Garth & Company, on the 12th of July, 1866, relieved the former of all liability for future assessments on the stock, that depends upon the proper construction of the positive statutory law of Virginia, under whose law the corporation was organized. It is a familiar principle, that a corporation, and all who deal with it, are bound by the law of its creation, and all such laws as may be legitimately prescribed for its government by the sovereign authority from which it derives its corporate existence. All persons, therefore, becoming stockholders in the company must be conclusively presumed to have contracted with reference to, and assumed all the liability prescribed by, the law of the domicil of the corporation. Such presumption is indulged, because the corporation must of necessity be controlled by the existing law of the State where it has its being, and it has no power to accept a party as stockholder on its books with a view to any other principle than that prescribed by the law of the State. This is clear upon principles of reason, and is fully established by authority. *Canada South. R. Co. vs. Gebhard,* 109 *U. S.,* 527, 537; *Glenn, Trustee vs. Clabaugh,* 65 *Md.,* 65.

Now, though it be true, as a general rule, that a *bona fide* transfer of stock on the books of the corporation terminates the liability of the party making the transfer, for future calls, both as to the corporation and its creditors; yet there may be exceptions to this general rule; and it appears that the State of Virginia, by statute, has made an exception to such rule.

In the Code of Virginia of 1860, tit. 18, ch. 57, given in evidence, among provisions relating to joint stock companies generally, under subdivision, entitled "How board may receive subscriptions of, and recover instalments on, stock, transfer and issue certificates therefor," we find this provision : "Sec. 24. No stock shall be assigned on the books without the consent of the company, until all the money which has become payable thereon shall have been paid; and *on any assignment the assignee and assignor shall each be liable* for any instalment which may have accrued, or *which may thereafter accrue,* and may be proceeded against in the manner before provided."

The terms of this section would seem to be too clear to admit of any reasonable doubt as to their meaning. The assignor is to remain liable not only for past assessments, but for any future assessments upon the stock. The assignment, while it may operate a complete transfer of title as between assignor and assignee, does not operate to release the assignor of his liability as stockholder to the company. Such assignment, therefore, does not operate, as against the company, a complete novation of liability, as in ordinary cases, in respect of future calls; but the assignor in his character of stockholder still remains liable, though the assignee of the stock becomes liable also. And hence the decree, of the 14th of December, 1880, under which the plaintiff derives authority to sue, directs that the assessment made upon the stock be paid by the stockholders of said company, each and every of them, and their assigns.

This provision of the statute, doubtless, was intended mainly as a protection to the creditors of the corporation. It was to secure the payment of all calls that might be made upon the stock, for the benefit of creditors and others, against the expedient often resorted to, when the corporation becomes embarrassed, of stockholders assigning their stock for nominal consideration to irresponsible persons. To prevent this, the section of the statute under consideration was enacted, and to give it full effect, the assignor must contiuue to be treated as a stockholder until the full par value of the shares be paid, if that be necessary. The question of the liability for assessments of the stock, whether already made, or that may be made, is one that must be considered and, if need be, provided for, as between the assignor and assignee, at the time of the transfer of the stock; but that is a matter with which the company has nothing to do. It has the right to insist upon the liability of the assignor, assumed at the time of becoming stockholder, to pay for the stock; and if he has assigned the stock to an irresponsible person, it is his misfortune, and not that of the company.

It is argued that this construction of the statute will work hardship upon persons who have assigned their stock, and will fetter transfers. But that is a question for the Legislature, and not for the Court. It may, in some cases, work hardship; but as a means of protection to creditors, it has much to commend it.

We have not been referred to any case where this provision of the statute has been considered by the Court of Appeals of Virginia. But we have been referred to cases recently decided in that State, by Courts of original jurisdiction, wherein this provision of the statute has been considered; and the construction held by those Courts is the same that we have placed upon it; and that too in respect to the liability of past or former stockholders of the National Express and Transportation Company, under the decree of the 14th of December, 1880.

The first of these cases is that of *Glenn, Trustee vs. Davis*, in the Corporation Court of the City of Norfolk, Virginia. In that case, the defendant pleaded, that he had assigned his stock in the company before the institution of the chancery suit in which the decree of the 14th of December, 1880, was passed; but that defence was overruled. And the learned Judge of that Court, in a well and carefully considered opinion, (with a copy of which we have been furnished,) held, that, under the provision of the statute to which we have referred, the defendant, notwithstanding the fact that he had assigned his stock as set forth in his plea, remained liable as stockholder for the assessment directed to be made by the decree of December 14th, 1880. And so in the case of *Glenn, Trustee vs. Scott*, in the Circuit Court of the United States for the Western District of Virginia, where the defendant alleged that he had assigned his stock in the company, and was not therefore a stockholder, and that he was not bound by the decree of the 14th of December, 1880, directing the assessments to be made upon the stock of the company; the learned Circuit Judge of that Court overruled the defence, and held the defendant liable as stockholder under the decree. And a similar ruling was made by the same learned Judge in the case of *Glenn, Trustee vs. Bland*, in the United States Circuit Court for the District of West Virginia.

Upon careful consideration, this Court is of opinion that the Court below committed no error in rejecting the two prayers offered by the defendant, and we must therefore affirm the judgment.

*Judgment affirmed.*

(Decided 21st January, 1887.)