John A. Hambleton and Edward T. Hambleton, trading as John A. Hambleton & Co. *vs.* John Glenn, Trustee of The National Express and Transportation Company.

*Corporation—Stockholders—Liability for Unpaid subscriptions—Calls and Assessments—Interest on Assessments.*

Under the Code of Virginia of 1873, title 18, ch. 57, section 26, providing that on any assignment of stock the assignee and assignor shall each be liable for any instalments which may have accrued, or which may thereafter accrue, the assignors of unpaid stock of a corporation are liable for all future calls or assessments thereon, though the transfer was regularly made on the books of the corporation, and certificates for the stock were issued to the transferrees.

Hambleton & Co. *vs.* Glenn, Trustee.

In an action against the assignors of unpaid stock of an insolvent corporation, by the trustee, appointed by a competent Court to sue for and collect all calls made by the Court upon the unpaid subscriptions to the capital stock of such corporation, for the purpose of paying its debts, it is no defence that after the appointment of the trustee, an order was obtained from the Court authorizing him to compromise with such stockholders as should pay within a specified time, a certain per cent. of the call and assessment ordered by the original decree.

Nor can the defence that the decree, obtained in the State of Virginia, establishing the indebtedness of the corporation, making an assessment upon the stock, and appointing the plaintiff trustee, was procured by collusion with one of the directors of the company, be availed of in an action in this State, by the trustee to collect such assessment.

Interest on the assessment made by the decree, is not chargeable from the date of the call, but from the time of demand or notice of the requirement to pay the assessment.

APPEAL from the Court of Common Pleas.

By agreement this cause was tried before the Court below (DUFFY, J.,) without a jury. The Court gave its verdict for the plaintiff for $13,694.58 and entered judgment thereon. The defendants appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, FOWLER, and McSHERRY, J.

*J. Southgate Lemon*, and *Bernard Carter*, for the appellants.

*John Howard*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is another of the many actions that have been brought by Glenn, trustee, against stockholders of the National Express and Transportation Company, a cor-

poration organized under the law of the State of Virginia, to recover calls made upon the shares of stock. As has been stated in other cases in this Court, the corporation becoming embarrassed in its affairs, it made a deed of assignment of all its assets for the benefit of its creditors, and the trustees in the deed failing to execute the trust, a creditors' bill was filed in the Chancery Court of the City of Richmond, in the State of Virginia, and a decree obtained, whereby the trustees in the deed were removed, and Glenn, the present plaintiff, was appointed trustee in the place and stead of the former trustees, with power and authority to sue for and collect any and all calls made by the Court upon the unpaid subscriptions to the capital stock of the corporation, for the purpose of paying the debts of the corporation, ascertained and adjudged to be paid by the decree. The decree was passed on the 14th of December, 1880, and it made a call or assessment upon each share of the stock, of 30 per cent. of the par value thereof, the par value being $100, and there having been a previous call of 20 per cent. The call of 30 per cent. so made was directed to be paid to the trustee; the decree providing that "the said trustee is hereby authorised and directed to collect and receive the said call and assessment, and to take such prompt steps to that end, by suit or otherwise, and in such jurisdictions, as he may be advised; and if the amount realized from this call and assessment shall prove to be insufficient for the purposes of this decree, liberty is reserved to the said creditors and the said trustee to move the Court for such further assessment as may be necessary and proper." The facts upon which the proceeding against the National Express and Transportation Company, and the trustees under the deed of assignment, in the Chancery Court of the City of Richmond, was founded will be found fully set forth in the cases of *Glenn, Trustee vs. Williams*, 60 *Md.*, 93, and *McKim vs. Glenn, Trustee*, 66 *Md.*, 479.

Hambleton & Co. *vs.* Glenn, Trustee.

It is alleged by the declaration in this case, that the defendants, the present appellants, had been the holders of 385 shares of the capital stock of the Express Company, of which there remained unpaid 80 per cent. of the par value of such stock; that the company had made an assignment of all its assets, including the unpaid subscriptions for stock, for the benefit of its creditors; that by the decree of the 14th of December, 1880, the debts of the company had been ascertained and adjudged to be paid, and that a call or assessment of 30 per cent. on the par value of the stock was made by the decree; that the original trustees under the deed of assignment had been removed, and the plaintiff substituted in their stead, with full power and authority to demand and collect, by suit or otherwise, the assessment so made upon the stock, and that demand had been made upon the defendants, and they had refused payment.

The defendants pleaded five pleas: first, That they never were indebted as alleged; second, That they never promised as alleged; and the third and fourth pleas, being special pleas, were demurred to; and by the fifth plea it was alleged that the National Express and Transportation Company was never duly served with process to appear in the suit in the Chancery Court of Richmond, and therefore the decree of the 14th of December, 1880, and all the orders passed in that cause, were and are, as against the defendants, null and void. Issues were joined on the first, second, and fifth pleas, and they were tried and passed upon by a jury, who found for the plaintiff, under instructions given by the Court.

There is no conflict or dispute in regard to the main facts of the case. All the statute law of Virginia, including the charter of the National Express and Transportation Company, bearing upon the questions involved; the record of the Chancery suit in Virginia, referred to in the declaration; and also the petition of the defen-

Hambleton & Co. *vs.* Glenn, Trustee.

dants filed in that cause, with the proceedings thereon, including the proceedings.thereon in the Court of Appeals of Virginia; were all produced in evidence, and are, by agreement, made part of the case before this Court.

It appears that the shares of stock in respect of which this suit was brought, had all been acquired and held by the defendants in 1866, and had all been sold and transferred by them to other parties, by actual transfer on the books of the corporation, and for which certificates had been issued by the company to the transferrees, prior to the 20th September, 1866, the date of the deed of assignment to trustees for the benefit of the creditors of the corporation. The plaintiff admitted, in respect to the ownership of the stock, that the assessment of $30 per share, sued for in this case, had been by the plaintiff collected from other persons, claimed to be liable therefor, as holders of such stock, as to 175 shares, part of the 385 shares; and that the assessment claimed of the defendants in this case is upon 210 shares. It was also shown in evidence that the plaintiff, by letter dated the 16th of March, 1881, gave notice to the defendants of the assessment upon the stock, and demanded payment within twenty days from that date.

Upon this evidence the jury were.instructed by the Court, at the request of the plaintiff, that if they found from the evidence that the defendants were stockholders of the National Express and Transportation Company before the passage of the decree of December 14th, 1880, by the Chancery Court of the City of Richmond, mentioned in the declaration, then, under that decree, and the laws of Virginia given in evidence, the defendants became liable to pay to the plaintiff the sum of $30 per share on each and every share of said stock which the jury might find to have been held by the defendants before the date of said decree of December 14th, 1880, less the amount of $30 per share on each and every share

Hambleton & Co. *vs.* Glenn, Trustee.

so held by them, which the jury might find to have been paid or settled for by other persons.    To the granting of this instruction the defendants excepted, and the first question is, was there error in so instructing the jury.

1. This instruction would appear to be strictly in accordance with the provision of the statute law of Virginia, in regard to corporations, in force at the time of the organization of the National Express and Transportation Company, and which was in force at the date of the decree of December 14th, 1880, and it was with reference to the provisions of the Virginia statute, that all the shares of stock of the corporation were issued to, held and transferred by, those dealing in such stock.    In the Code of Virginia of 1860, tit. 18, ch. 57, sec. 24, but in Code of 1873, same tit. and ch., sec. 26, it is provided, that "No stock shall be *assigned on the books* without the consent of the company, until all the money which has become payable thereon shall have been paid; and on *any assignment the assignee and assignor shall each be liable for any instalments which may have accrued, or which may thereafter accrue,* and may be proceeded against in the manner before provided."    And by sec. 29 it is provided, that "If any such person shall, for valuable consideration, sell, pledge, or otherwise dispose of, any of his shares of stock to another, and deliver to him the certificate for such shares, with a power of attorney authorising the transfer of the same on the books, the title of the former (both at law and in equity) shall vest in the latter so far as may be necessary to effect the purpose of the sale, pledge or other disposition, not only as between the parties themselves, but also as against the creditors of any subsequent purchasers from the former, *subject to the provision of the twenty-sixth section.*"

As we have said on a former occasion, when required to construe this same provision of the statute, the terms of the 26th section would seem to be too clear for any

reasonable doubt as to their meaning. In the case of *McKim vs. Glenn, Trustee,* 66 *Md.,* 479, it was held by this Court that both the assignor and assignee of the stock of the corporation remained responsible for all future calls thereon, though the transfer was regularly made on the books of the corporation. This is the clear import of the terms employed in the statute; and there is no ground for the distinction attempted to be made by the defendants, between an assignment of the certificate and the transfer of the stock on the books of the corporation; for section 26 speaks of and designates the transfer on the books as an assignment of the stock. It is that act of transfer that the statute contemplates when it declares that both the assignor and assignee shall each remain liable for any instalment which may thereafter accrue, to be collected in the manner provided. And by section 29, while the owner of stock is allowed to sell, pledge or otherwise dispose of his shares, by delivering the certificates therefor, and such disposition is declared to be sufficient to vest title in the assignee, so far as may be necessary to effect the purpose of such disposition, *as between the parties,* yet it is expressly provided that such disposition can only be made subject to the provision of the 26th section; that is to say, that both parties to the assignment shall remain liable to all instalments that may thereafter accrue due to the company. If this was not the purpose, why subject the assignment authorised by the 29th section to the provision of the preceding 26th section at all?

We have, however, been strongly urged to reconsider our previous construction of these sections of the Virginia statute; and if we could see that there was any reasonable ground for supposing that there was error in our construction adopted in the case of *McKim vs. Glenn,* we should not hesitate to reconsider that construction, and to correct the error. But we see no reason to doubt the

correctness of our former conclusion. Prior to the deci-
sion of that case by this Court, the question of the con-
struction of these same sections of the statute had been
the subject of consideration of both State and Federal
Courts in Virginia, and they had all concurred in holding,
as this Court held, that both the assignor and assignee
were liable for future calls upon the stock, notwithstand-
ing such stock had been regularly transferred before the
institution of the proceedings that resulted in the pass-
age of the decree of December 14th, 1880. Since the
decision of this Court in *McKim's Case,* the same ques-
tion has arisen and been decided by Courts of last resort,
and among them the Court of Appeals of Virginia, and
they have all placed upon these sections of the statute
the same construction that this Court placed upon them.
They have all held that both the assignor and assignee
were liable for future calls upon the stock, by force of
the language of the 26th section of the 57th chapter of
the Code. In *Morris vs. Glenn, Trustee,* 87 *Ala.,* 628,
630, the Supreme Court of Alabama, in passing upon
this same question of the construction of the Virginia
statute, held, that one who had assigned his shares of
stock in the National Express and Transportation Com-
pany prior to the call made by the Court, was still liable
for the assessment, by force of the terms of the statute.
And in *Hambleton & Co. vs. Glenn, Trustee,* 13 *·Va. Law
J.,* 242, (a case between the same parties, and in rela-
tion to the same subject-matter, of the present case,)
the Court of Appeals of Virginia, in deciding the case
before them, said, in reference to the defence now set
up,—"But they further claim that they have assigned
their stock, and are not liable as assignors, having been
originally assignees. The statute, however, includes
them, (ch. 57, sec. 26, Code,) and provides that on any
assignment the assignee and assignor shall each be
liable for any instalments which may have accrued, or

Hambleton & Co. *vs.* Glenn, Trustee.

which may thereafter accrue, and may be proceeded against in the manner before provided. They were first assignees, and were liable because their assignor had not paid up the stock, and now they are assignors, and are liable as such because they have not paid up the stock before assignment, and so are their assignees. This is the obvious meaning and purpose of the law." And in the case of *Hawkins vs. Glenn*, 131 *U. S.*, 319, 334, the Supreme Court, after quoting the language of sec. 26, ch. 57, of the Virginia Code, state the construction of the section by the Court of Appeals of Virginia, in *Hambleton & Co. vs. Glenn*, and of this Court in *McKim vs. Glenn*, without intimation of a different opinion, and only say that the question of liability in respect to certain shares of stock that had been transferred by the defendant, was not presented on the record. Indeed, it does not appear that the counsel in that case deemed it worth their while to raise and present the question. Surely, under such circumstances, this Court ought not to be expected to open the question of construction that has been settled by such concurrence of opinion, with nothing to the contrary.

2. Now, in order to avoid the liability thus fixed by the statute, and authorized to be enforced by the decree of December 14th, 1880, the defendants have set up certain special defences, which have not heretofore, in any of the numerous cases founded upon the call made by the decree of December 14th, 1880, in the different Courts of the country, been attempted to be availed of,—certainly not heretofore judicially sanctioned as valid defences, in any of the cases to which we have been referred,—and not even suggested by the defendants themselves, in their petition for review and reversal of the decree of December 14th, 1880, filed so late as November 3rd, 1887, the final adjudication upon which was made by the Court of Appeals of Virginia, and to which we have already referred.

The special defences taken were set out in the third and fourth pleas, to which the demurrers were entered by the plaintiff, and the demurrers were sustained.

The third plea entirely fails to present a bar or full answer to the action. If the facts alleged were found to be true, they would not entitle the defendants to the verdict. The plea does not present a material, single, and certain issue of fact, which, if found for the defendants, would constitute a full answer to the claim made by the declaration, and therefore bar the right to recover. If the matter set up in the plea were available at all, it would only be in reduction of the 30 per cent. call upon the stock, and would be admissible in evidence under the plea of never indebted as alleged.

But we cannot perceive upon what principle the matter of this plea can avail the defendants in any form. The plea alleges that after the decree of December 14th, 1880, ascertaining the amount of indebtedness of the National Express and Transportation Company, and fixing the rate of assessment upon each and every share of the capital stock of the company, for the purpose of paying the debts thus ascertained, *the various creditors and complainants,* (without naming the creditors) for the purpose of avoiding the possible result of a pending litigation as to the validity of the decree of December 14th, 1880, instituted by certain stockholders, assented to the passage of an order by the Court, of July 21st, 1883, whereby the plaintiff, as trustee, was authorised and directed to accept from *any* of the stockholders of the company, *or from any other person claimed to be liable on account of the stock,* within six months from the date of said order, $25 per share, part of the $30 per share called for by the decree of December 14th, 1880, with interest and costs, "*in full discharge of all further liability, of all persons on account of the shares of stock wherever such payment should be made.*" That the stockholders who insti-

Hambleton & Co. *vs.* Glenn, Trustee.

tuted the proceedings for a review and vacation of the
decree of December 14th, 1880, for the purpose of avoid-
ing any further liability and loss, accepted the terms of
the order of July 21st, 1883, and paid the amount speci-
fied, and abandoned their petition and allowed the same
to be dismissed, and thereby permitted the original bill
of complaint and the decree thereon of December 14th,
1880, to remain without further question or impeach-
ment; that the number of stockholders who accepted
the terms of the order and paid the amount specified,
exceeded one hundred, and the number of shares in
respect to which the $25 per share was paid, exceeded
four thousand. And it is further alleged, that these pro-
ceedings were taken and had without the knowledge and
consent of the defendants; and that the creditors of the
company, by procuring and assenting to the passage of
the order of July 21st, 1883, and by authorising the
plaintiff to accept the $25 per share from the stock-
holders, with interest, &c., in full discharge of all lia-
bility for and in respect of the stock, and by procuring
the dismissal of the petition assailing the decree, with-
out decision thereon, "abandoned and surrendered any
right, *if any they had*, to demand, ask or receive from
these defendants, *any other or greater sum* than the twenty-
five dollars per share, with interest and costs, as in the
decree of July 21st, 1883, is provided, or to in anywise
further enforce said decree of December 14th, 1880."

The defendants, while they allege that the proceedings
that led to the decree of July 21st, 1883, were had with-
out their knowledge, do not allege that they were not
aware of the offer made by the decree, within the period
allowed for the election to accept the terms prescribed ,
nor do they allege that they were prevented from avail-
ing themselves of the terms offered by the decree by any-
thing done or said by the plaintiff, or those represented
by him. On the contrary, we find from the record in

evidence, that the Chancery Court at Richmond, by its order of the 13th of December, 1883, in order that all persons interested might have the opportunity to avail themselves of the terms of compromise offered, if they so desired, directed and required the trustee to transmit a copy of the compromise decree "to every person against whom any liability is asserted;" and further, that in every case where suit should thereafter be instituted before January 21st, 1884, against any person, a copy of the decree of July 21st, 1883, should be served on such person. This requirement, it is fair to presume, was observed by the trustee in the case of the defendants, as the suit was not brought until the 5th of January, 1884. But the defendants not only failed or refused, within the time prescribed, to avail themselves of the liberal offer of compromise and settlement, authorised by the Court, but they have not even made proffer by their plea to accept and comply with the terms of the decree. They allege that because some of the stockholders did elect to accept the terms of settlement offered, and paid the amount specified, thereby other stockholders and persons liable on the stock, were released from all further liability. But is that the legal effect of this compromise decree, making offer of terms of settlement to every one alike who were liable on the stock of the company? We think not. The assessment made by the decree of December 14th, 1880, was of a certain per cent. upon each and every share of stock ; and each person liable therefor became severally liable, and not jointly liable with others. The failure to collect from some could not discharge others. All that each individual stockholder could insist upon was, that the assessment should be equal and uniform upon all the stock alike, and that it should not exceed what was required for the payment of the debts of the company. But these were questions for the Chancery Court of Virginia, and they have been

finally determined and adjudicated upon by the decree of December 14th, 1880, and there is no power in this Court to review that decree. The compromise decree was entered nearly three years after the assessment of the 30 per cent. per share was levied, and the liability of the defendants fixed ; and there is no allegation or pretence that the liability of the defendants for the 30 per cent. call has been enlarged by the compromise effected with some of the stockholders. Moreover, the compromise decree of July 21st, 1883, did not suspend or stay the operation of the original decree of December 14th, 1880, but, in express terms, it declared that such original decree should not be suspended in its operation. Each person liable upon the stock of the company had his right of election given whether he would accept the terms of compromise or not, but until he did accept and comply with the terms of the decree, he remained bound for the assessment imposed by the original decree of December 14th, 1880. We are clearly of opinion, therefore, that the Court below committed no error in sustaining the demurrer to the third plea.

3. With respect to the fourth plea, a different question is presented, but one, we think, which was correctly determined by the Court below.

This fourth plea makes defence on equitable grounds, and sets up matter supposed to be sufficient to vacate and completely destroy the validity of the decree of the 14th of December, 1880, under which this suit is brought. It is alleged by the plea, that in the case in which the decree of December 14th, 1880, was passed, reference had been made to a commissioner to ascertain the amount of debts of the corporation, and to whom due ; that the commissioner reported a very large amount of indebtedness as being due to a large number of persons and corporations ; that the company was without counsel to represent it, and without officers, resident in the State

of Virginia, except Joseph R. Anderson, who resided in the City of Richmond, and who was charged in the bill of complaint as being a director of the company : That Anderson, *if he was in fact a director*, as alleged, was the only director residing in Virginia, and that he was holder of 100 shares of the stock of the company, upon which $8000 remained unpaid, and for which he was liable: That if he was director as alleged, it was his duty to defend the company and the stockholders against all unjust claims reported by the commissioner as due from the company ; but notwithstanding his duty in the premises, and that he believed that many of the claims reported were stale and barred by limitations ; that others were not properly presented or proven, and that others were without merit and were fraudulent, and that he had determined to contest such claims, the complainants in the cause, fearing the result of such contest, agreed with Anderson to accept from him $2000 in full of all claims against him as stockholder, and to release him from all liability for further payment on the stock held by him ; and, upon the making of such agreement, in pursuance of the object and intent thereof, Anderson abandoned all further opposition to the said stale, barred and fraudulent claims, included in the report of the commissioner, " and thereupon the complainants procured the passage by the Court of the decree of December 14th, 1880, in the declaration mentioned, establishing the said stale, barred and fraudulent claims, and appointing the plaintiff trustee ; and so the defendants say, that the said decree of December 14th, 1880, establishing the said indebtedness and appointing the plaintiff trustee, was in fact procured by the collusion of the plaintiffs in said cause in the Chancery Court in the declaration mentioned, and of the director of said company, and is illegal and void, and ought not to be used in evidence or otherwise against the defendants, who were

not, prior to said time, or at any other time, a party to said cause, or cognizant of said covin and collusion, or able to prevent the same, but were non-residents of the State of Virginia.''

The facts alleged in this plea are set up and attempted to be availed of as a defence and bar to recovery, in a purely *collateral proceeding.* They do not present the question of the want of jurisdiction of the Chancery Court of Richmond to render the decree of December 14th, 1880. That Court was one of competent jurisdiction, and it is not denied, indeed conceded, that it had acquired jurisdiction over the corporation as defendant, and those represented by it, by service of process upon one of the directors and upon the cashier of the company. A single member of a board of directors of a corporation, while service of process upon him may be sufficient to bring the corporation into Court to defend, is not clothed with power, or charged with the duty, of making and conducting a defence for the corporation. He may defend for himself, if he is sought to be charged or affected by the decree, but he is not required alone, nor is he authorised, to assume the duty and responsibility of shaping and prosecuting any particular defence for and in behalf of the corporation; nor is the corporation bound by a defence interposed by a single director. *General Ins. Co. vs. United States Ins. Co.,* 10 *Md.,* 517 ; *Peck vs. Detroit Novelty Works,* 29 *Mich.,* 313 ; 1 *Moraw. on Corp., sec.* 531. Anderson being made a party defendant to the bill of complaint, appeared and answered, but not in his character of director, and did not admit that he was a director of the company ; and it was not until the making of the decree of December 14th, 1880, that it was determined and finally settled that he was a director, and that the service of process upon him was sufficient to subject the corporation to the jurisdiction of the Court.

If, instead of a demurrer to the plea, the facts alleged had been traversed, what would have been the nature and scope of the inquiry before the jury? The decree of the 14th of December, 1880, ratified the report of the commissioner, and established the debts therein reported to be due and owing, consisting of many hundreds of claims of various natures and amounts, and due to as many different persons. It is not alleged in the plea that all, or even the greater part, of these claims were either stale, barred or fraudulent; but that Anderson *believed that many of the claims* were stale, barred, and not properly proven, and that others were without merit and were fraudulent. But what particular claims were so devoid of merit, or were fraudulent, or to whom such claims were reported to be due and owing, the plea wholly fails to allege. The creditors are not before the Court in this case, even if their names had been set forth in the plea, and any investigation that might be had in regard to their claims would not only be going behind the decree of the Virginia Court, but would be entirely *ex parte.* Neither is General Anderson before the Court to vindicate the contract alleged to have been made with him that formed the inducement to his withdrawing his opposition to claims embraced in the report of the commissioner. It is not the simple fact that General Anderson compromised his liability for and in respect to the stock held by him, and then withdrew from a contest in which he was no longer interested, that constitutes the essence of the equitable defence that is sought to be made available ; but the alleged facts that he was corruptly induced to abandon his duty as director and to forego all resistance to many claims that were stale, barred or insufficiently proven, or that he believed were fraudulent, in order that such claims might be established by the decree of the Court, and that they were so established to the wrong and in-

jury of the defendants, constitute the gravamen of the defence set up by this plea. In the trial of an issue formed upon this plea, these latter facts would be essential to be established ; and upon such trial could it be maintained for a moment, even if the defendants could succeed in establishing to the satisfaction of a jury, that some few, and it might be of the most insignificant of the many claims embraced in the decree of the Court, had not been sufficiently proved, or were stale or barred, or even fraudulent, that therefore the whole decree, including the parts making the assessment upon the stock and appointing the plaintiff trustee, should be declared absolutely null and void ? We cannot think so.

It has been strongly argued, however, that as fraud vitiates everything, even the most solemn judgments or decrees of the highest Courts, the allegation of fraud as affecting a decree of a sister State ought to be allowed, if supported by facts, as a defence to an action founded on the decree; and this notwithstanding the provision of the Constitution and laws of the United States, that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State ; " and that they "shall have such faith and credit given to them in every other Court in the United States as they have by law or usage in the Courts of the State from whence the said records were or shall be taken." The general proposition contended for, as applied to judgments and decrees, is undoubtedly true. But the question here is, whether such defence can be taken in a *collateral proceeding*, founded upon a decree, where, to give effect to such defence, the decree of a Court of competent jurisdiction of a sister State is required to be reviewed, and declared null and void, by the Court in which such defence is made ? This is a Federal question, and the Court of last resort for the determination of such question would seem to have defi-

Hambleton & Co. *vs.* Glenn, Trustee.

nitively settled, that the allegation of fraud in obtaining the judgment or decree sued on in a State other than that in which the judgment or decree was obtained, is not allowable as a defence; but that resort must be had for relief to some appropriate direct proceeding.

In the case of *Christmas vs. Russell*, 5 *Wall.*, 290, it was held by the Supreme Court of the United States, upon careful review of the authorities, that a judgment conclusive between the parties in the State where rendered is equally so in every other Court in the United States, and consequently that the plea of fraud in procuring the judgment is not a legal answer to the declaration; in other words, that the plea of fraud is not available as an answer to an action on the judgment; and that such judgment can only be impeached by a *direct* proceeding taken for the purpose. And so in the case of *Maxwell vs. Stewart*, 22 *Wall.*, 77, it was held by the same Court, that fraud could not be pleaded to an action in one State upon a judgment recovered in another. In that case the late Chief Justice WAITE, in delivering the opinion of the Court, said: "In *Christmas vs. Russell*, 5 *Wall.*, this Court held that fraud could not be pleaded to an action in one State upon a judgment in another. With this we are satisfied." And in the still more recent case in the same Court, of *Hanley vs. Donoghue*, 116 *U. S.*, 1, 4, it is laid down as the settled law of the Court, that "Judgments recovered in one State of the Union, when proved in the Courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a Court having jurisdiction of the cause and of the parties."

Nor has this Court been less explicit in laying down the law upon this subject. In *Glenn vs. Williams*, 60 *Md.*, 121, while considering the effect of this same de-

Hambleton & Co. *vs.* Glenn, Trustee.

cree of December 14th, 1880, this Court said: "That decree appears to stand unreversed, and as the Court had jurisdiction of the parties and of the subject-matter before it, the Courts of this State would not be at liberty to go behind that decree to determine what claims against the corporation ought to have been allowed, and what claims were subject to the bar of the Statute of Limitations or other defences, and ought, therefore, to have been rejected. If there has been fraud or collusion in the establishment of these debts, or any of them, against the corporation, to the wrong and injury of the stockholders, the latter may obtain relief by suitable application; but that can only be to a Court of equity, and not by way of defence to an action at law for the recovery of an assessment upon the capital stock." And so the Supreme Court of the United States, in the recent case of *Hawkins vs. Glenn*, 131 *U. S.*, 332, in speaking of this same decree, say: "The Court may have erred in its conclusions, but its decree cannot be attacked collaterally, and, indeed, upon a direct attack, it has already been sustained by the Virginia Court of Appeals,"—citing the case of *Hambleton vs. Glenn*, the parties to this cause, and wherein the same subject-matter of the present case was involved. 13 *Va. Law J.*, 242. And that decision has been adhered to and repeated in the recent case of *Glenn, Trustee vs. Liggett, and others*, 135 *U. S.*, 533.

If there was ground for supposing that there had been fraud or collusion practiced in obtaining the decree, to the wrong of the defendants, they should have applied to the Court rendering the decree, upon the distinct ground of such fraud or collusion, for a reversal or vacation of such decree, and not attempt an impeachment of it in a collateral proceeding in another jurisdiction. In such direct proceeding against the decree for reversal or vacation, all the parties concerned would have been

present in Court to defend their claims against the allegation of fraud or collusion; whereas, on the impeachment of the decree in a collateral proceeding in a Court of law, such parties could enjoy no such advantage. The mode of proceeding seems to be well established by authority; and it would, moreover, seem to be conducive to the fair administration of justice. *Graham vs. Boston, Hartford and Erie R. R. Co.*, 118 *U. S.*, 162, 177.

We think, for the reasons stated, the Court below was clearly right in sustaining the demurrer to the fourth plea.

4. The only remaining question presented on this record, is one in regard to the right of the plaintiff to recover interest on the assessment. The Court below instructed the jury to allow interest on the assessment from the 3rd of January, 1881, the day on which the plaintiff bonded and qualified as trustee; and refused a request by the defendants to instruct that the question of interest was one entirely within the discretion of the jury, and that interest should be allowed or not, as the jury might determine, under the circumstances of the case.

The original subscription to the stock of the corporation, in respect of which the defendants are sued, was a Virginia contract, and had reference to the law of Virginia, existing at the time, as to the nature and extent of its obligation. The Code of Virginia of 1860, the provision of which is continued in that of 1873, tit. 18, ch. 57, secs. 21 and 23, declares that "If the money, which any stockholder has to pay upon his shares, *be not paid as required* by the president and directors, the same, *with interest thereon*, may be recovered by warrant, action, or motion as aforesaid." The Supreme Court of the United States, in the case of *Hawkins vs. Glenn, supra,* quote the section of the Virginia Code just recited, and say that "Interest would, therefore, seem chargeable

from the date of the call.'' We, however, think that interest is only chargeable, *as matter of legal right*, from the time of demand or notice of the requirement to pay the assessment; (*Scovill vs. Thayer*, 105 *U. S.*, 143, 155;) and that notice appears to have been given on the 16th of March, 1881. The reduction that this will make of the amount that was recovered under the instruction of the Court, is certainly small; but it is an erroneous recovery that must be corrected.

*Judgment reversed, and*
*new trial awarded.*

(Decided 18th June, 1890.)