GLENN *v.* LIGGETT. SAME *v.* FOY. SAME *v.* DORSHEIMER. SAME *v.*
FRY. SAME *v.* TAUSSIG *et al.* SAME *v.* PRIEST, (two cases.) SAME
*v.* DAUSMAN. SAME *v.* MCKELLOPS. SAME *v.* BERTHOUD.

*(Circuit Court, E. D. Missouri, E. D.* September 21, 1891.)

**1. CONFLICT OF STATE AND FEDERAL JURISDICTION.**

A suit in equity in a federal court by a stockholder against a corporation while it
is a going concern, and its officers and directors, to restrain certain acts as *ultra
vires,* and to redress abuses of administration, in which a decree is also sought
winding up the affairs of the corporation, and in which a receiver is appointed,
even if the court would have authority, at the instance of a stockholder, to wind
up the affairs of the corporation on the ground of insolvency, does not affect or
render void proceedings in a suit in a state court by a judgment creditor of the
corporation, to ascertain the validity of, and construe, a deed of assignment by the
corporation, to have an account taken of its debts, and, if necessary, an assessment
levied on the shareholders, where it appears that the suit in the federal court was
dismissed before any action was taken by the state court for the acquisition and
distribution, under its orders, of any property of the corporation.

**2. CORPORATIONS—STOCKHOLDERS—PROOF OF SUBSCRIPTIONS—STOCK-BOOKS.**

The stock-books of a corporation, when identified, are competent evidence to
show that persons named therein as stockholders were such, though evidence *ali-
unde* is necessary to show that a particular person, bearing a name mentioned
therein, is the person named; and a stock subscription list, the signatures of which
are shown to be genuine, is sufficient proof for the purpose, in the absence of evi-
dence in rebuttal.

**3. SAME—EVIDENCE—CONFIDENTIAL COMMUNICATIONS BETWEEN ATTORNEY AND CLI-
ENT.**

A contract between an attorney and certain persons, by which the latter agree
to pay the former certain fees for defending suits against them by a certain corpo-
ration, in which contract there are admissions that they are stockholders in the
corporation, and possession of which has been lawfully acquired by a third per-
son, is not, on the ground that it is a confidential communication between attorney
and client, inadmissible for the purpose of proving that the parties thereto are
stockholders.

**4. SAME.**

In such case the attorney may be compelled to testify as to receipts of fees from
the parties to the contract, for the purpose of proving the genuineness of their
signatures thereto.

**5. CORPORATIONS—PROOF OF ORGANIZATION—RECORDS.**

The books of a corporation, containing a record of the proceedings had in its or-
ganization, are admissible to show that the corporation, as subsequently named, is
the same as that otherwise named in taking subscriptions, though the proceedings
recorded in the books may have been had before an amendment of the charter au-
thorizing organization under the name finally adopted, if the same books, contain-
ing such proceedings, have been used to record the subsequent proceedings of the
corporation after its final organization.

**6. SAME—EVIDENCE—CASH-BOOK.**

To show that a certain person is a stockholder in a corporation, entries in its
cash-book, purporting to show payments of assessments by him, are not admissible.

**7. SAME—HEARSAY.**

The report of the treasurer of a corporation to the board of directors is inadmis-
sible to establish the authenticity of the facts reported, since it is mere hearsay.

At Law.

*Chas. Marshall* and *Thos. K. Skinker,* for plaintiff.

*Smith & Harrison, W. H. Clopton, Geo. W. Taussig, Henry T. Kent,* and
*S. N. Holliday,* for defendants.

THAYER, J. These are actions brought to collect certain assessments
on stock of the National Express & Transportation Company, which as-
sessments were levied by virtue of orders made in an equity suit orig-

inally brought in the chancery court of the city of Richmond, Va., wherein Glenn's administrator was complainant, and the National Express & Transportation Company *et al.* were defendants. In certain suits like the ones at bar, brought in other courts, some questions have been settled, and are no longer open to controversy. For example, it has been held that the statute of limitations did not begin to run in favor of stockholders, as against their stock liability, until the assessments thereon were actually levied. *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. Rep. 739; *Glenn* v. *Liggett*, 135 U. S. 533, 10 Sup. Ct. Rep. 867. It has also been held that, in the absence of fraud, and conceding that jurisdiction was acquired over the National Express & Transportation Company, the stockholders of the corporation, as well as the corporation, are bound by the decree of the Virginia court ordering the assessments, and that they cannot, in suits like these, question the validity of the assessments. *Hawkins* v. *Glenn*, *supra; Glenn* v. *Liggett*, *supra; Glenn* v. *Williams*, 60 Md. 121; and *Lewis* v. *Glenn*, 84 Va. 947, 6 S. E. Rep. 866. It is likewise settled that the chancery court of the city of Richmond did acquire jurisdiction over the National Express & Transportation Company by the mode of service employed. The record in the *Glenn Case*, which was offered, is conclusive on that point. *Lehman* v. *Glenn*, 87 Ala. 626, 6 South. Rep. 44; *Semple* v. *Glenn*, (Ala.) 9 South. Rep. 265. See, also, *Lewis* v. *Glenn*, 84 Va. 947, 6 S. E. Rep. 866. And, finally, it has been held that a person once a shareholder of the National Express & Transportation Company remains liable for assessments levied on his stock, even after he has regularly assigned the same, and that his assignee is also liable. *Morris* v. *Glenn*, 87 Ala. 628, 7 South. Rep. 90; *Hambleton* v. *Glenn*, 72 Md. 331, 20 Atl. Rep. 115, and citations; *Hamilton* v. *Glenn*, 85 Va. 901, 9 S. E. Rep. 129. The foregoing propositions must be regarded as settled by previous adjudications.

The several suits now before the court were all tried together, without the intervention of a jury. Much of the testimony offered by the plaintiff was objected to by the defendants, and the ruling of the court thereon was reserved. It now remains to announce the rulings as to the admission of such testimony as was received subject to objection, and to determine whether the admitted testimony is sufficient to prove that defendants were stockholders of the National Express & Transportation Company, and, incidentally, to dispose of some other questions.

1. The first contention on the part of all the defendants is, that all the orders and decrees made in the case of *Glenn's Adm'r* v. *National Express & Transportation Company et al.*, from the date of its institution to the present moment, are utterly void, and may be impeached collaterally, because of the prior institution and pendency of what is known as the "*Reynolds Case*," in the federal circuit court for the eastern district of Virginia. But the authorities cited do not support that contention. *Wiswall* v. *Sampson*, 14 How. 53, decides that a sale of land under an execution emanating from one court, while the land is in the custody of a receiver appointed by another court, conveys no title, unless the sale is

made by leave of the court having possession of the *res.* *Peale* v. *Phipps,* Id. 368, decides that a judgment rendered against a trustee or receiver in his representative capacity, so that it can only be collected out of property committed to his custody as receiver of some other court, is an erroneous judgment, unless leave to sue the receiver has been obtained, and will be reversed on appeal. Whether such a judgment is void, in such sense that it might be assailed collaterally, the case in question does not decide. *Barton* v. *Barbour,* 104 U. S. 126, decides that a suit cannot be maintained against a receiver in his representative capacity in the courts of a state other than that in which he was appointed, without special leave to so sue first obtained from the court whose officer he is. In *Heidritter* v. *Oil-Cloth Co.,* 112 U. S. 294, 5 Sup. Ct. Rep. 135, it was held, in a case where property was actually in the custody of a federal court for the purpose of condemnation and forfeiture under the revenue laws, and while so held a suit was instituted against it in a state court to enforce a mechanic's lien, that a sale under a judgment rendered in the latter suit, though the sale took place after a sale under the decree of the federal court, conveyed no title to the purchaser. But the court very carefully refrained from deciding (*vide* page 305, 112 U. S., and page 140, 5 Sup. Ct. Rep.) that the judgment of the state court was void and of no effect for want of jurisdiction. It simply held that the judgment could not be enforced by a sale of the property under a special *fi. fa.* in the manner undertaken In the proceedings at bar it appears that the *Reynolds Case* was a suit brought by a stockholder of the National Express & Transportation Company, while it was a going concern, against the corporation and its officers and directors, to restrain acts that were *ultra vires,* and to redress abuses of administration. An attempt was very likely made, in a subsequent motion for the appointment of a receiver, (which motion is not found in the record,) to extend the scope of the bill so as to obtain a decree winding up and liquidating the affairs of the corporation on the ground of insolvency. But it may well be doubted whether the federal court, at the instance of a stockholder, had any authority to wind up the affairs of the corporation on the ground of its insolvency. Ordinarily, and in the absence of a statute expressly authorizing such a proceeding, courts of equity have no greater control over the affairs of a private corporation when it becomes insolvent than they have over the affairs of an individual. They are not courts of bankruptcy. Mor. Priv. Corp. §§ 281, 282. Now, Glenn's administrator was a judgment creditor of the National Express & Transportation Company, a Virginia corporation. His suit in the chancery court of the city of Richmond, begun subsequently to the institution of the *Reynolds Case,* contemplated relief of various kinds. In the *first* place, he asked to have the validity of a deed of assignment executed by the judgment debtor judicially ascertained and declared; *secondly,* he asked to have the deed construed in those respects where its meaning was doubtful and subject to controversy; and, in the *third* place, he asked to have an account taken of the debts of the corporation, and, if necessary, an assessment levied on shareholders.

It is obvious, I think, that the cases in the federal and state courts were not of such character as to occasion a necessary conflict between the two courts, as to the custody of any property. The state court might have rested its action with a simple determination of the validity and construction of the deed of assignment, leaving the federal court to administer the corporate assets as it deemed proper, if it found it in possession of the assets, under prior orders or decrees made in the *Reynolds Case.* In point of fact, no conflict did occur between the two courts as to the custody of any property. After the order appointing a receiver was made in the *Reynolds Case,* a supplemental bill, in the nature of a bill of revivor, which was never served, appears to have been filed on August 22, 1870, and thereafter no further action of any sort was taken for more than 10 years, when the order appointing the receiver was vacated, the receiver discharged, and the bill dismissed, by order of the federal circuit court, on representations made by the receiver that the plaintiff in the suit had ceased to prosecute the action for many years, and that he had himself failed to obtain possession of any property of the corporation, because prior to his appointment as receiver the same had already been seized under writs of attachment issued by various courts located outside of the state of Virginia. It was only after this date—after the *Reynolds Case* was finally dismissed—that any action was taken by the chancery court of the city of Richmond looking towards the acquisition and distribution under its orders of property of any sort that could possibly have been administered by the federal court. Under these circumstances, it cannot be held that the mere pendency of the *Reynolds Case* renders all orders made in the *Case of Glenn's Administrator* utterly nugatory and void. In the opinion of the court, the decrees made in the last-mentioned suit cannot be impeached in this proceeding by the record in the *Reynolds Case.* The record in the *Reynolds Case* is immaterial testimony, and is accordingly excluded.

2. A further contention arises over the admissibility of certain entries contained in a number of books produced at the trial, purporting to be books of the National Express & Transportation Company. As to the first objection urged,—that there is no evidence in the case tending to identify the books as the books of the corporation,—it is sufficient to say that the court entertains the view that the testimony of Mr. Smoot not only tends to identify them, but that it is sufficient to warrant the court in finding that some of the books produced, particularly the books entitled "Stock Ledger," "Stock Transfer Book," and "Proceedings of the Executive Committee," are in fact corporate records, and are entitled to such credence as usually attaches to books of that character when properly identified. A more important question is this: To what extent are the entries in these books admissible for the purpose of showing that the defendants are or were stockholders of the company? I take it to be settled, so far as this court is concerned, that the stock-books of a corporation (and by that I mean the stock ledger and transfer books) are always admissible to show who are or have been its stockholders; and that, when so admitted, they create a presumption that its stock is owned, or

has' been owned, in the amount shown by the stock-books, by persons of the various names borne upon such books as shareholders. This I understand to be the ruling in *Turnbull* v. *Payson*, 95 U. S. 421, and it has been adopted and followed by other courts in which this plaintiff has had occasion to bring suits. *Glenn* v. *Orr*, 96 N. C. 413, 2 S. E. Rep. 538; *Vanderwerken* v. *Glenn*, 85 Va. 14, 6 S. E. Rep. 806; *Semple* v. *Glenn*, (Ala.) 9 South. Rep. 267. When a particular person is sued as a shareholder, however, and he denies being such, the mere production of the stock-book may not always be sufficient to establish his liability. As there may be numerous persons of the same name, there may be cases in which it would be incumbent on the plaintiff to show by proof *aliunde*, that the party sued is the same person referred to by the stock ledger. Identity of name is not always sufficient to establish identity of person. The cases at bar, in my judgment, are cases of the kind last mentioned. The stock of the National Express & Transportation Company was widely scattered throughout the country, and the shareholders were very numerous. Plaintiff cannot rely merely on the identity of names. In each of these cases he must produce testimony of some sort, sufficient to satisfy the court that the party sued is the same person whose name is registered on the stock-books, and not some other person of the same name. Acting in accordance with these views, the court admits the entries in the stock ledger, showing that persons of the same name as these defendants are or have been stockholders of the National Express & Transportation Company, and showing, as well, the amount of their several holdings, and from whom acquired, and the payments made thereon. And I may as well add, in this connection, that, inasmuch as the signatures of defendants Fry, Daniel G. Taylor, Priest, Dorsheimer, and Foy to the stock subscription list, hereafter referred to, were proven to be genuine, that paper, in my judgment, is sufficient proof of the identity of the defendants last named, and, in connection with the stock ledger, establishes the fact that they are or have been stockholders, in the absence of any evidence on their part tending to rebut the presumption thus raised against them.

3. A further controversy arises over what is termed the "Fee Contract." Many years ago, (in August, 1867,) a contract was made at St. Louis, Mo., by certain persons with Bogy, Ewing & Holliday, a firm of lawyers, to defend actions brought against them by the National Express & Transportation Company on stock assessments. The contract relates exclusively to the fees such attorneys should receive from the persons who signed it, for legal services to be rendered in such suits in their behalf. This contract contains a recital, in the nature of an admission, that the various persons who employed Messrs. Bogy, Ewing & Holliday were stockholders of the National Express & Transportation Company. It also shows the amount of their several holdings, inasmuch as they agreed to pay a fee of $2,000, proportional to the shares of stock by them owned, which are specified in the contract. Plaintiff produced this contract at the trial, and gave evidence tending to establish that the names of J. E. Liggett, H. Dausman, Lewis Dorsheimer, Daniel G. Tay-

lor, and R. M. Fry, thereto subscribed, are the genuine signatures of the defendants of that name. He then offered S. N. Holliday, of the firm of Bogy, Ewing & Holliday, to prove, as against other signers whose signatures were not otherwise proven, (particularly as against Taussig, Livingston & Co.,) that the latter firm had admitted its signature to the "fee contract" by acting under it, and paying money thereon according to its requirements. The "fee contract" is objected to by the defendants whose signatures thereto were duly proven by direct testimony; that is to say, by Messrs. Liggett, Dausman, Dorsheimer, Taylor, and Fry, on the ground that the contract is a confidential communication between client and attorney, and for that reason is inadmissible. This objection I regard as clearly untenable. The contract was produced in court by the plaintiff, the same having been obtained from a third party, to whom Mr. Holliday had surrendered it as a voucher or receipt, when his fees were paid by that party. Mr. Holliday was not compelled by any process of court to produce the contract. It was a document lawfully in the custody of the plaintiff when offered, and no particular sanctity attaches to it because it happens to be a contract between a lawyer and his client in relation to fees. Furthermore, the contract in question contained no admissions or statements made by a client to his attorney with a view of obtaining any advice thereon. The contract related wholly to the fee that should be paid, and the proportions in which the several signers should contribute to its payment. It stands, therefore, on the same basis as a contract made by the defendants with a person not an attorney, in relation to any other subject-matter which might have fallen into the plaintiff's hands.

A more debatable question, no doubt, is whether Mr. Holliday is a competent witness to prove payments made by the several defendants under the contract in question. The tendency of such evidence, and its only tendency or relevancy, is to establish the genuineness of certain signatures appended to the contract, particularly that of Taussig, Livingston & Co., as to which no other proof was offered. It is indirect evidence, having a strong tendency to prove the fact intended, by showing that the party had recognized the genuineness of his signature. When the signatures to the "fee contract" are identified, the document then speaks for itself. No further identification is necessary, as it contains a material recital, which, as a matter of course, is admissible against all who are shown to have signed it. Now, bearing in mind the tendency of Mr. Holliday's testimony, and that it was only relevant to prove a certain signature or signatures, the court concludes that he was a competent witness for the purpose offered. An attorney is a competent witness to prove a client's handwriting, even though he becomes acquainted with it after the relation of client and attorney is established, as was held in *Johnson* v. *Daverne*, 19 Johns. 134; and I can conceive of no material difference between allowing an attorney to give direct evidence of the genuineness of a signature, and indirect evidence, such as was offered in the present case. But to my mind a more conclusive reason for overruling the objection is this: Mr. Holliday was

not called upon to disclose any communication made to him by his client in the character of an attorney; he was simply called upon to testify as to what action his client took in relation to a contract between them, and this solely with a view of showing that the client's signature thereto was genuine. In a matter of this kind, an attorney can claim no greater privilege than any other witness who might have been called to give similar testimony in relation to action taken by the client with reference to a contract of a different nature. The case does not fall within the reason of the rule that exempts an attorney from disclosing communications made to him by his clients. On this branch of the case my conclusions therefore are as follows: *First*, that the "fee con tract" is clearly admissible as against the defendants whose signatures thereto were proven by direct evidence of their handwriting, namely, Liggett, Dausman, Dorsheimer, Taylor, and Fry; and that it serves to identify all of those defendants as the persons in whose names shares are registered on the stock ledger of the National Express & Transportation Company; and, *second*, I conclude that Mr. Holliday's evidence as to money paid him under the "fee contract" is admissible in all of the cases in which such evidence was offered; but whether, admitting such evidence, the genuineness of the signature of Taussig, Livingston & Co. to the "fee contract" is established, is a question of fact to be hereafter considered.

4. The original stock subscription list heretofore referred to in paragraph 2 purports to be a subscription to the stock of the National Express Company. For the purpose of showing that the National Express Company and the National Express & Transportation Company is the same organization, under different names, and also for the purpose of showing the due organization of the corporation, plaintiff offered certain entries in books purporting to contain "proceedings of stockholders' meetings," and "proceedings of the executive committee." These entries are objected to by the defendants against whom they were offered. It is sufficient to say of them that, if admitted, they establish the facts intended to be proven; that is to say, the identity of the National Express Company with the National Express & Transportation Company, and the due organization of the corporation under the latter name. They show, in substance, that proceedings to organize what is now the National Express & Transportation Company were first taken under an act already passed to incorporate the Southern Express Company, but with an intent, entertained from the beginning, to obtain an amendment of the act changing the corporate name, and increasing the amount of stock. The first name suggested was the "National Express Company," and under that name certain proceedings were taken by the promoters, but later the name was changed to the "National Express & Transportation Company," and it was by the latter name that the organization was christened in the act amending and re-enacting the act to incorporate the Southern Express Company.

The admissibility of the entries showing the foregoing facts is contested mainly on two grounds: (1) That the books in which the entries

are found are not identified as the books of the corporation; and (2) that, if they are so identified, the record of proceedings taken before the amendment of the charter of the Southern Express Company is not admissible, because the proceedings were had before the grant of any franchise. The first of these objections is sufficiently answered by what has been heretofore said. The testimony of Mr. Smoot sufficiently shows that the books in which the entries are found are books in which the proceedings of the stockholders and executive committee, and of the directors, when the corporation was fully organized, were customarily kept and recorded. I entertain no doubt of that fact. The second objection, in my opinion, should likewise be overruled. It is generally held that the proceedings taken by the directors and stockholders of a corporation can be shown by the books of the corporation in which such proceedings are recorded; and usually the books or certified transcripts therefrom are the only appropriate evidence of such proceedings. For the same reason that corporate books are admitted to prove the action of its stockholders and directors, I think they should be admitted to show the preliminary action taken to organize the corporation, when such action is recorded in the same books subsequently used by the corporation to record the proceedings of its governing body, and when a record appears to have been regularly made of the various steps taken towards organization. A record of that description, as a general rule, will prove more reliable evidence of what was done than the oral testimony of any one who may have participated in the organization. By incorporating such proceedings into its record, the corporation gives them an authenticity which they would not otherwise have. It stamps them as genuine, and in such case no substantial reason can be given why the record of what was done after complete organization should be entitled to greater weight than the record of what occurred previously. I have concluded, therefore, to admit the class of entries now under consideration, for the purpose above mentioned. They are entitled to the same credence which attaches to other entries in the same books, purporting to be proceedings taken by the governing body after full organization.

5. The admissibility of two other species of book-entries remains to be considered. The first are entries in a "cash blotter" of the National Express & Transportation Company, purporting to be an account of moneys received by the corporation from various persons, and, among others, from several of the defendants. The second is an entry found in the record of the board of directors under date of May 18, 1866. It purports to be merely a copy of a report made to the board by the treasurer, and it is offered not to show any action taken by the board, but to establish the authenticity of facts reported to it. The latter entry, I think, is clearly inadmissible, because of its hearsay character. Of the first class of entries, it may be said that they are found in one of the books of the company detailing its every-day business transactions. They are offered unaccompanied by any other proof than that the cash blotter is one of the books used by the company, and that the entries are

in the handwriting of the treasurer. Whether he is dead or living was not shown. If the entries were offered otherwise than by an incorporated company,—that is, by a business man or trader, to establish in his own favor, and by his own books, that certain sums of money had been paid to him by certain persons,—the better opinion is that they would not be admissible on the showing here made. *Chaffee* v. *U. S.*, 18 Wall. 516–541. Now, I understand that the rule heretofore alluded to and followed extends no further than this: The stock-books of a corporation, when identified, are admissible to create the presumption that persons registered as shareholders are in fact such, (*Turnbull* v. *Payson*, *supra*;) and the record kept of the proceedings of stockholders and directors is admissible to show that such proceedings were in fact taken. But it does not follow that entries in all other books kept by the corporation are, when identified, admissible in its favor to prove the facts which they happen to attest. It has never been so decided. On the contrary, the distinction is well marked between the use of books to prove who are registered shareholders, or to show corporate action taken by stockholders and directors, and the use of books to prove ordinary business transactions, such as the receipt or payment of money by the corporation. *Railroad Co.* v. *Eastman*, 34 N. H. 124; *Haynes* v. *Brown*, 36 N. H. 545; Thomp. Stockh. § 370. I conclude, and so rule, that the entries in question in the cash blotter are not admissible for the purpose designed.

6. The question left undetermined above, (*vide* paragraph 3,) as to whether the evidence of Mr. Holliday is sufficient to warrant a finding that Taussig, Livingston & Co. signed the "fee contract," involves a conclusion of fact. For the following reasons, I answer that question in the negative: It appears that the firm of Taussig, Livingston & Co. became dissolved some years before the transactions testified to by Mr. Holliday. While Mr. Holliday testifies to the receipt of a sum of money which he credited to Taussig, Livingston & Co., yet he wholly fails to identify the person who made such payment. It nowhere appears that the person making the payment was a member of the firm in question, or that he was authorized to act for it, or make admissions binding on the firm, and Mr. Holliday is unable to say that the money was paid in recognition of an obligation created by the fee contract. The testimony, therefore, does not amount to an admission of the genuineness of the firm's signature, and does not warrant the admission of the "fee contract" in the *Taussig Case*.

7. In view of the testimony admitted in the several cases, it is evident that the ultimate conclusion must be that defendants Liggett, Foy, Dausman, Dorsheimer, Fry, Priest, and Priest as executor of Taylor, are or have been stockholders of the National Express & Transportation Company, holding, respectively, the number of shares charged in the several complaints.

The evidence in the *Case of Taussig's Executors* is not so persuasive, but, even in that case, a similar finding must be made, for the following reasons: On the stock ledger 100 shares of stock are registered as be-

longing in 1866, and now, to the firm of Taussing, Livingston & Co., of St. Louis, Mo., a name almost identical in sound with that of Taussig, Livingston & Co., and the sum of $1,500 is credited as having been paid thereon. It does not appear that there ever was a firm in St. Louis of the name of Taussing, Livingston & Co., but it does appear that there was in 1866 a well-known firm of Taussig, Livingston & Co., the deceased members whereof are represented in this suit by the executors. The evidence further shows that on August 10, 1866, the National Express & Transportation Company drew a draft on Taussig, Livingston & Co., of St. Louis, Mo., for $500, which on its face purported to be drawn on account of an assessment on its capital stock; and no evidence is offered by the executors tending to show that the firm they represent was not in fact a subscriber to the stock of the company; in other words, they fail to offer any evidence tending to rebut the presumption which these facts create.

In the case against Dr. Henry J. McKellops plaintiff must rely entirely on the entry in the stock ledger. That creates the presumption that a person by the name of J. H. McKellops was a stockholder, but there is not sufficient evidence in the case to identify "J. H. McKellops" with "Henry J. McKellops," the party sued, and I accordingly find in his favor.

In the case of Mrs. Catherine A. Berthoud, also, the evidence is insufficient to warrant a finding against her. She testifies that her signature to the original subscription list, heretofore referred to, was placed there by her husband, without her authority; and, furthermore, that she remained ignorant of the fact that she was registered as a shareholder on the books of the corporation until about the time the suit against her was commenced. She has successfully repelled the presumption raised by the stock ledger.

8. This, I believe, disposes of all matters necessary to be considered, except the application to amend the answer, made in the *Case of Priest, Executor of Taylor,* and a plea of the statute of limitations, also made in the same case. On the very eve of the trial, counsel for defendant asked leave to amend his answer by pleading in bar to the count on the second assessment levied against decedent, on March 26, 1886, a judgment of this court, rendered on September 12, 1884, in a suit to recover the first assessment of December 14, 1880, made on decedent's stock, in which suit it was held that the statute of limitations was an effectual bar to the action. That the former judgment in favor of defendant proceeded upon an erroneous view of the time when the statute began to run has since been held by the supreme court of the United States. *Vide Hawkins* v. *Glenn,* 131 U. S. 319, 9 Sup. Ct. Rep. 739. Now, waiving any expression of opinion as to whether the judgment in the suit on the first assessment would or would not be a bar to the present action on the second assessment, the court has concluded that, in view of the late hour at which leave to amend was asked, and in view of the fact that leave is sought to plead an erroneous judgment, it would not be a proper exer-

cise of its discretionary powers to permit the amendment to be made. The application in question is therefore overruled.

The denial by Missouri laws of the right to present claims against executors and administrators after the lapse of two years from the date of their letters is also pleaded as a defense in the same case. The answer to the plea is that no demand existed which could be presented or exhibited until March 26, 1886, when the assessment was made. The bill in this case was filed on March 16, 1888; that is, within less than two years after there was a cause of action. The statute did not begin to run until there was a cause of action to be barred, as has been repeatedly held in Missouri. *Finney* v. *State,* 9 Mo. 227; *Miller* v. *Woodward,* 8 Mo. 169; and *Chambers* v. *Smith,* 23 Mo. 174.

Judgment will be entered, as herein indicated, for the several amounts claimed against all the defendants, except H. J. McKellops and Mrs. Berthoud. Interest will be allowed on the assessments from such date after they were levied as suits to recover the same were brought.