## LITTLE ROCK GRANITE CO. v. DALLAS COUNTY.

(Circuit Court of Appeals, Fifth Circuit. December 31, 1894.)

### No. 311.

EVIDENCE—BOOKS OF ACCOUNT.

For the purpose of proving the amount expended by a county in remedying defects in material supplied to it by a contractor, the county introduced in evidence a ledger or time book, kept by one S., and purporting to show the time during which laborers worked and the sums paid them, supplemented by the evidence of one T., the deputy clerk of the county court, to the effect that S. was in charge of the laborers, and it was his duty to keep such book; that S. was a careful bookkeeper, and kept correct books; and that S. was living in another state. *Held*, that the admission of the book, without the evidence of S. as to the correctness of the entries, was error.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This action was brought in the circuit court by the Little Rock Granite Company against Dallas county, in the state of Texas, to recover the balance of price of certain stone furnished by the granite company, and used by the county in the erection of a courthouse. The first amended original petition contains two counts, one to recover the balance of the contract price for certain granite furnished under a contract originally entered into between the granite company and one R. L. James, which, after partial performance, on the insolvency of James, was assumed by Dallas county; and the other to recover the value of certain stone furnished Dallas county at its special instance and request. Dallas county answered—First, by a general denial; second, by pleading a contract between the county and R. L. James to furnish all the material and erect a courthouse, a contract between the granite company and James to furnish all the granite for the building in accordance with plans and specifications, the partial compliance of the granite company with its contract with James, the abandonment by James of the contract to build the courthouse, and the assumption by the county of the contract between James and the granite company, with an understanding between the parties that at the time of the assumption there was only the sum of $22,000 due the granite company, which sum was to be credited with certain payments, whereby the county, in fact, assumed only the sum of $6,669.75, which amount the county averred it had overpaid to the extent of $1,280.05; third, that the granite furnished by the granite company was not properly cut, and to cut and finish the same the county paid the sum of $2,214.10, as per an itemized statement attached, and also the further sum of $624.12 for sharpening tools used by the stone cutters in finishing the granite; fourth, that under the contract between the granite company and James, which was assumed by the county, the granite company was required to furnish certain archivolts, which said company failed and refused to furnish, and for which the county was compelled to and did expend the sum of $5,000; and, fifth, that by reason of the neglect and refusal of the granite company to furnish the archivolts, which neglect and refusal continued for more than 100 days thereafter, the granite company, under and by virtue of its contract with said James and assumed by Dallas county, had forfeited, and was obligated to pay, to the defendant county the sum of $50 per day, amounting to the sum of $5,000. For all of the sums, to wit: Overpayment, $1,280.05; cost of sharpening tools, $624.12; cost of cutting granite, $2,614.10; failure to furnish archivolts, $5,-000; and forfeiture for delay, $5,000,—Dallas county prayed judgment in reconvention.

The trial of the case resulted in a verdict in favor of the county for $281.42, from which judgment the granite company prosecutes this writ of error, assigning errors as follows: "First. The court erred in refusing the first special instruction requested by the plaintiff, for the reason that said instruction was demanded by the testimony in the case. Second. The court erred in refusing

the second special instruction requested by plaintiff, because said instruction was pertinent to the issues presented by the pleading and the proof. Third. The court erred in refusing the third special instruction requested by the plaintiff, because the proof showed that the memorandum mentioned in said special instruction was delivered to the Little Rock Granite Company as embracing all of the granite which it was to cut under the contract, and said contract should have been construed in connection with said memorandum. Fourth. The court erred in not submitting to the jury the plaintiff's right to recover upon a quantum meruit, as stated in its petition. Fifth. The court erred in instructing the jury that, under the contract, the plaintiff was required to furnish the archivolts. The testimony shows that the word 'archivolt' is not in either of the contracts made between James and the Little Rock Granite Company, or between James and Dallas county, and that there is nothing on the blue prints or specifications indicating that the archivolts are even to be made of stone. Sixth. The court erred in admitting in evidence a book purporting to be a ledger, and kept by one Tap Scott, to establish and prove the amount of money paid for sharpening tools, because it was shown that Tap Scott was living, and that his testimony could be procured, and no offer was made to prove the correctness of the account mentioned in said book otherwise than the book, as shown by the eleventh paragraph of the bill of exceptions. Seventh. The court erred in admitting in evidence the time book kept by Tap Scott to prove the amount paid for cutting granite between August 24, 1891, and September 26, 1892, for the reasons stated in the sixth assignment of error, and as fully shown in the twelfth paragraph of the bill of exceptions."

M. L. Crawford, for plaintiff in error.
A. T. Watts, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The first to fifth assignments of error, inclusive, refer to the refusal of the court to charge the jury as requested by the plaintiff in error, to the charge of the court as given to the jury, and to the failure of the court to submit to the jury the right of the plaintiff in error to recover upon a quantum meruit. We are unable to consider these assignments of error, because the exceptions were not fully saved in the circuit court. The bill of exceptions shows that the plaintiff tendered three separate propositions to be given by the court to the jury, which the court refused to give; and that the court then charged the jury, the charge being set forth in full; but the bill does not show that any exception was taken to the refusal of the court to charge as requested, or to the charge as given, or to any part thtereof. Phelps v. Mayer, 15 How. 159. See, also, rule 10 of this court, 47 Fed. vi.

The sixth and seventh assignments of error are to the effect that the court erred in admitting in evidence, over the objections of the plaintiff in error, the time book kept by one Tap Scott, to prove payments by the county to the extent of the amounts respectively claimed for the necessary sharpening of tools and for recutting stone. In relation to this ruling of the court the bill of exceptions recites:

"The defendant, to maintain the issue on its part, offered testimony tending to prove that the granite cut and furnished by the plaintiff was not cut in a good and workmanlike manner, and that in order to fit the same the de-

fendant was compelled to have the same recut, and in this recutting and refitting the defendant expended the sum of $2,641. The defendant also offered testimony tending to prove that it expended the sum of $624.12 in sharpening and repairing tools, which work was made necessary by the defective cutting of said granite. * * * And be it remembered that during the progress of the trial the defendant proved by J. E. Turner that he was the deputy clerk of the county court of Dallas county, and kept the minutes of the commissioners' court; that one Tap Scott was employed by the county court of Dallas county to keep the time of the men employed as laborers upon said courthouse; that the said Tap Scott was a careful bookkeeper, and kept correct books of account; that the said Tap Scott was in New Orleans, in the state of Louisiana, and had been for over eighteen months; there having been no direct proof offered as to the amount of money expended in the sharpening of tools above referred to, and no proof from which the amount paid for such work could be inferred in evidence, a book in the handwriting of the said Tap Scott, which purported to be a ledger, showing that from February 15, 1891, to August 15, 1892, the county judge paid for work, drills, anchor chains, and sharpening and grinding tools, made necessary in the cutting of the granite placed in said courthouse, the sum of $644.12. To the introduction of this testimony the plaintiff objected: (1) Because it was not shown that the said Tap Scott was dead, but, on the contrary, it was shown that he was living, and that his testimony could be produced; (2) no effort was made to prove the correctness of said account by other evidence than the time book kept by said Tap Scott, and there was no other evidence as to the correctness of said account. But the court overruled said objections, and permitted the book to be read in evidence, to which the plaintiff excepted. And be it further remembered that, on the trial of the above-entitled cause, the defendant having proved by J. E. Turner that he was deputy clerk of the county court of Dallas county, and was charged with keeping the minutes of the commissioners' court; that one Tap Scott was in charge of the laborers employed by Dallas county in working upon the courthouse for said court from August 23, 1891, to September 26, 1892: and that it was the duty of said Tap Scott to keep an account book showing the time during which each man labored and the rate at which he was paid per day, and the amount earned by him for the time labored; and it was further proved that said Tap Scott was a careful bookkeeper, and that Tap Scott was in New Orleans, and had been for more than eighteen months. It was shown that, in addition to the laborers employed in cutting granite for said courthouse, there were other laborers employed in laying brick, plastering, and various other kinds of work, more men being employed in the last-named vocation than there were employed in cutting stone. It was further proved by Turner, deputy clerk as aforesaid, that from the time book kept by said Scott he picked out the names of the various parties employed in cutting stone, and from the names so selected from said time book the said Turner made up an account for cutting stone in favor of Dallas county, and against the said Little Rock Granite Company, for the sum of $2,614.10, for the time embraced between August 24, 1891, and September 26, 1892. It was proved by the said Turner that the men thus employed had been paid by the county of Dallas the aggregate sum above stated; that the said Turner testified that he had no personal knowledge as to whether or not said account was correct, although he knew some of the men, and knew that they were employed in cutting stone for said courthouse. Two of the men employed in cutting stone for said courthouse were introduced as witnesses. They testified that they were cutting stone for the first story of the courthouse, which was completed before Dallas county assumed the contract between James and the Little Rock Granite Company. The two witnesses thus examined testified that all the work they did in cutting stone after the said county assumed the contract was to cut some finials, and it was shown that Orlopp, the supervising architect, ordered the finials shipped in the rough or uncut. Thereupon the defendant offered to read in evidence the time book of the said Tap Scott as evidence of the fact that the work had actually been performed by the man therein designated, to which the plaintiff objected: (1) Because it was not shown that Tap Scott was dead, or that his testimony could not be obtained. (2) It was not shown that Scott kept accurate books of account. (3) It was not shown that the

men employed to do the work, and who actually did the work, were not accessible, and that their testimony could not be obtained. (4) Because no effort was made to prove the correctness of said account except by the books kept by the said Tap Scott as aforesaid. But the court overruled the objections, and permitted the time book to be read in evidence, to which action and ruling of the court the plaintiff then and there excepted."

On the showing made, we do not consider that the time book kept by Tap Scott was an official or public record, or a record in any wise importing verity, but, rather, that the book stands on the same footing as the account books of a merchant. In Chaffee v. U. S., 18 Wall. 516–541, where the question was as to the admissibility of certificate books of certain collectors of tolls on the Miami Canal, the court, after declaring that the books were not public records, said:

"Their admissibility must, therefore, be determined by the rule which governs the admissibility of entries made by private parties in the ordinary course of their business. And that rule, with some exceptions not including the present case, requires, for the admissibility of the entries, not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead or insane, or beyond the reach of the process or commission of the court."

Instructive cases in the matter of the admission of books in evidence are Nicholls v. Webb, 8 Wheat. 326; Bates v. Preble, 151 U. S. 149, 14 Sup, Ct. 277; Glenn v. Liggett, 47 Fed. 480; Kent v. Garvin, 1 Gray, 148; Jackson v. Evans, 8 Mich. 476. The latest case by the supreme court of Texas on the subject to which we have been referred is Werbiskie v. McManus, 31 Tex. 116–123. It is there said: "This court has invariably decided that the best testimony that it is within the power of the parties to procure by ordinary or extraordinary means shall be exhausted before the books of a party shall be given in evidence." We think it is clear that the admission of the time book kept by Tap Scott, without the production of Tap Scott to prove the same, when, as it appears, the evidence of Tap Scott could have been obtained, was erroneous; and that the evidence of Turner, the deputy clerk, as to the duty of Tap Scott to keep an account book, and that Scott was a careful bookkeeper, was wholly insufficient to excuse the defendant county from producing the evidence of Scott himself to verify his own record. It is contended by the learned counsel for the defendant in error that as it was proved that it was the duty of Scott to keep the book and to make the entries, that he was a careful bookkeeper, and that at the time of the trial he was beyond the jurisdiction of the court, the entries in the book should be considered as made in due course of business, by a party whose duty it was to make them, and is made contemporaneous with the transaction, and therefore the book was admissible as part of the res gestae. In relation to evidence of this kind meeting all the requirements here recited, Mr. Greenleaf lays down the rule, supported by adjudged cases, that, if the party who has made the entries is living and competent to testify, it is necessary to produce him. Greenl. Ev. (5th Ed.) § 1115. The defendant in error further contends that the claim of the county

in the two respects mentioned was sufficiently established upon other evidence to entitle the county to recover, and therefore that the admission of the time book of Tap Scott, if erroneous, was not reversible error. We are not informed by the bill of exceptions of all the evidence offered in the case, and therefore cannot say whether the defendant county was entitled to a recovery for the amount of the two items in question, irrespective of what is shown by Tap Scott's time book. The bill of exceptions shows that while evidence had been offered tending to prove that the county had been compelled to expend in recutting and refitting stone the sum of $2,614.10, and tending to prove that it had expended the sum of $624.12 for sharpening and repairing tools, yet there had been no direct proof as to the amount of money expended in sharpening tools, and no proof offered from which the amount paid for such work could be inferred; and, as to the item of $2,614.10, the proof was that Turner, deputy clerk, picked out from the time book kept by Scott the names of the parties employed in cutting stone, and from the names so selected the said Turner made up an account for cutting stone in favor of Dallas county and against the Little Rock Granite Company for the sum of $2,614.10; and that while the said Turner testified that the men thus employed had been paid by the county of Dallas he had no personal knowledge whether or not said account was correct, although he knew some of the men, and knew that they were employed in cutting stone for said courthouse; and, further, that two of the men employed in cutting stone for said courthouse testified that all the work which they did was to cut some finials, which it was shown had been ordered by the supervising architect to be shipped in the rough or uncut. As we understand the showing made in the bill of exceptions, the amounts which the county was seeking to recover for sharpening tools and recutting stone were wholly indefinite, except for the evidence furnished by Tap Scott's time book, and we are forced to conclude that the error of the court in admitting the time book in evidence was material, and affected prejudicially the interests of the plaintiff in error. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to grant a new trial.