# The State Mutual Fire Insurance Company of Harrisburg, Pa., Appellant, *v.* John C. Smith.

*Mutual insurance—Relations of officers and members.*

In a mutual insurance company the officers and directors of the company are simply the representatives of the members, and it is their duty to make assessments upon every outstanding note in order to meet the losses sustained; the relation among the members is one of mutuality, and they agree to bear each others' burdens and pay their pro rata share of each loss sustained. Even if one member has been induced to become such by fraudulent statements and representations he may not neglect to cancel his insurance and wait to defend as against false statements made in inducement of his membership.

*Mutual insurance—Fraudulent statement by the company's agent—Liability for assessments.*

Where a member of a mutual insurance company has been induced to take out a policy by false representations as to the plans and status of the company, such a condition would disclose a good and perfect defense to assessment demands as between the company and the assured, were the question solely one between these two parties, but where the assured has been guilty of laches in canceling his policy during a period during which there had been a large increase of members as well as of money losses he is liable for assessments, made during the life of his policy, necessitated by such losses.

Argued Feb. 19, 1896. Appeal, No. 5, Feb. T., 1896, by plaintiff, from judgment of C. P. Union Co., Sept. T., 1894, No. 185, on verdict in favor of defendant. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Appeal by defendant from judgment of a justice in favor of plaintiff for $101.39. Before McCLURE, P. J.; verdict for defendant.

It appeared from the evidence that the plaintiff was a mutual insurance company, and that claim was made by the said plaintiff to recover three several assessments on a premium note. The defense was that defendant had been induced to give the note and take out a policy dated September 14, 1891, by reason of certain representations made by the secretary which were subsequently ascertained to be untrue; these representations having relation to the maintenance of an indemnity fund. Defendant never formally directed his policy to be canceled.

Assessments were made as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| May 10, 1892 | on policies in force | April 1, 1892 | | | | $42.00 |
| Dec. 5, " | " " | " " | | May 25, " | | 30.00 |
| Dec. 16, 1893 " | " " | " " | | Sept. 3, 1893 | | 21.00 |

It appeared that during the life of the defendant's policy many new members had joined the company and that numerous losses had been incurred. Plaintiff presented among others the following points, which were refused.

6. That by the terms of the charter, by-laws and note, as a member of the corporation, John C. Smith, the defendant, submits himself to the act of the directors as the common representatives of all the members. He and they are all bound by

the assessments made unless he can show fraud or gross mistake; and the presumption is in this case that these assessments have been properly laid, and there being no evidence in this case of fraud or gross mistake, the plaintiff is entitled to recover.

Per Curiam : We refuse to instruct you as requested. [5]

7. That under the evidence in the case the plaintiff is entitled to recover the three assessments in suit.

Per Curiam : Refused. [6]

8. That the terms of the policy permit the defendant to surrender his policy at any time upon the payment of the assessments and any other liability under his policy and premium note; and that until he does so he is liable to all assessments made during the life of his policy; and the defendant not having taken advantage of this privilege the plaintiff is entitled to recover all of the assessments in suit.

Per Curiam : This point is refused as put. [7]

Defendant's first point, which was affirmed, was as follows :

1. That if the jury find from the evidence that the plaintiff company did not have an indemnity fund in ready money, or available securities for the same, as provided in section 14 of the by-laws of the company, at the time the defendant signed the assessment note, then the plaintiff is not entitled to recover in this suit.

Per Curiam : This point is affirmed. [8]

*Errors assigned* among others were, (5–7) refusal of plaintiff's 6th, 7th and 8th, points; (8) affirmance of defendant's 1st point.

*J. M. Linn* and *P. B. Linn*, for appellant.

*Samuel H. Orwig*, for appellee.

OPINION BY WILLARD, J., April 13, 1896:

As this case was presented in the court below it is not surprising that the learned trial judge lost sight of an important question involved in the case. It certainly was not presented to him as it should have been, if at all, and in the hurry of the trial the true status of the appellee evidently did not occur to him, and he is not to be censured for the error. We cannot,

however, let it go without correction. That there was want of good faith on the part of the secretary of the insurance company in his negotiations with the appellee for the policy clearly appears.

The evidence shows that after repeated interviews during the months of August and September, 1891, between the secretary and appellee, the policy was issued to the latter on the 14th of September; that at the time the secretary informed the appellee that he would have to pay a membership fee of $10.00, a survey fee of $1.25, sign a premium note for $300 and make a cash deposit of $50.00 ; that the cash deposit went into and formed part of a fund to be kept entirely separate and would be returned to him in case his contract should be terminated according to the rules and regulations of the company. At the same time the secretary explained to Mr. Smith " their plans." It appears in section 14 of the by-laws of the company, " A part of their plans," that the fund of which the $50.00 formed part was made up of one sixth of each member's premium note, and that the amount of these deposited should go into a fund called the " Indemnity Fund," subject to be drawn upon to reimburse withdrawing members according to the contracts, and for no other purpose.

The representations thus made to the appellee, as detailed by him in his testimony, were not denied by the secretary when on the witness stand.

The original reports made by the appellant to the insurance department of the condition of the company for the years 1891, 1892 and 1893 were produced by the official custodian of the files and records of the insurance department, and verified and identified by him in the court below as such reports sworn to by the proper officers of the company and under its seal, were offered in evidence by the appellee, and properly admitted.

It is only necessary to refer to the report of the company for the year 1891 to show the falsity of the secretary's statement to the appellee. From this report it appears that the total amount of premium notes in force December 31, 1890, was $28,717.50, calling for an indemnity fund of $4,786.25. According to the testimony of Mr. Huntzinger, the secretary, the indemnity fund at that time amounted to $3,813.34, showing a deficit of $972.91. That on December 31, 1891, the total

amount of premium notes in force amounted to $52,121.50, calling for an indemnity fund of $8,686.92. That the total amount of assets of the company after deducting admitted liabilities amounted only to $8,029.01, showing an actual deficit of $657.91. The other reports also tended to prove that there was no separate indemnity fund and no such fund was reported to the insurance department as a liability.

The jury found, as matter of fact, that the signature of the appellee to the premium note was obtained by a false statement of the existence of an indemnity fund of which his $50.00 deposit was to form part, and which had no real existence or meaning, and was not kept intact and inviolable for the purpose for which it was pledged.

Upon the discovery of this fraud, the appellee had a plain duty to perform. He owed a duty to his fellow members, a duty created by the very relation of mutuality between the members of the insurance company. By the system of insurance adopted by the appellee and his fellow members, they had agreed to bear each others' burdens and pay their pro rata share of each loss as it occurred. It was the effect of this relation that was lost sight of and not considered as it should have been in the court below. The officers and directors of the company are simply the representatives of the members, and it was their duty to make assessments upon every outstanding note in order to meet the losses sustained. The minutes of the directors showing the levy of the assessments were properly admitted, and when so admitted made out a prima facie case against the appellee. His only real defense was the fraud on the part of the secretary in procuring his signature to the premium note. This, under certain circumstances, would be a good and perfect defense, but the appellee cannot avail himself of it. By his own evidence he disclosed a large increase of members from the date of his policy to the time he was called upon to pay his share of the losses, and by the same evidence it is shown conclusively that during the same period many losses had occurred, necessitating the assessments actually made. The appellee's policy and note were dated September 14, 1891, and he enjoyed the full benefit of his insurance till December 3, 1892. When he refused to pay assessment No. 3, assessment No. 2 of $42.00 was fully provided for

by his deposit of $50.00, which was expressly applicable to the payment of the same. The testimony of the appellee that he went to the company's office and did not succeed in finding any one in, hardly amounts to a legal excuse for the non-cancellation of his policy, nor did the nonpayment of assessment No. 2 absolve him from further liability. It was optional on the part of the company to cancel the policy or not. By his laches the appellee lost the opportunity to have his policy canceled, and he allowed the rights of other parties to intervene while he was a member of the company, and upon no just principle should he be allowed to escape the burden of his undertaking. Other members sustained losses; the appellee in this respect was more fortunate, but he must contribute his full pro rata share to make good the losses of other members, as he has undertaken to do, until their losses are paid and fully satisfied: Howard v. Turner, 155 Pa. 349; Dettra v. Kestner, 147 Pa. 566.

The plaintiff's sixth, seventh and eighth points should have been affirmed by the learned judge in the court below, and the defendant's first point should not have been affirmed. The fifth, sixth, seventh and eighth assignments of error are sustained. The other specifications are without merit and are overruled.

Had there been no other question involved than the misrepresentations of the secretary to the appellee, there would be no occasion to reverse this judgment, but as the evidence of the appellee disclosed unpaid losses amounting to over $9,000 during the life of his policy and a large increase in membership, and the case having been submitted to the jury without due consideration of the rights of these members, the judgment is reversed and a venire facias de novo awarded.