## BROWN v. ALLEBACH et al.

(Circuit Court, E. D. Pennsylvania.   December 28, 1908.)

No. 10.

1. LIMITATION OF ACTIONS (§ 2*)—COMMENCEMENT OF ACTION—TIME—WHAT
LAW GOVERNS.
    The law of the forum determines the time within which an action must
be commenced.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 4;
Dec. Dig. § 2.*]

2. LIMITATION OF ACTIONS (§ 66*)—ACCRUAL OF RIGHT—UNPAID SUBSCRIPTION
—CALL.
    Where a stock subscription is not presently payable in full, but by its
terms is to be paid as called by the corporation, limitations do not begin
to run until a call is made.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §
357; Dec. Dig. § 66.*]

3. CORPORATIONS (§ 243*)—INSOLVENCY—UNPAID CALLS.
    Where unpaid stock in a corporation was purchased by brokers for
customers, and the brokers knew that the stock was transferred to them
on the books of the corporation, and did not repudiate the transaction,
but remained stockholders of record while the corporation became indebt-
ed to creditors and until after an assessment by the corporation's receiver,
they were liable for such assessment, though they were not the real own-
ers of the stock.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 946;  Dec.
Dig. § 243.*]

4. CORPORATIONS (§ 145*) — STOCKHOLDERS — UNPAID  CALLS — TRANSFER . OF
STOCK.
    A transferror of stock in a corporation is liable to corporate creditors
for unpaid calls made while the stock remains on the corporation's
books in his name untransferred to the purchaser, notwithstanding such
transfer.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 530; Dec.
Dig. § 145.*]

5. CORPORATIONS (§ 80*)—STOCKHOLDERS—UNPAID CALLS—FRAUD.
    Where stockholders in a corporation, after knowledge of fraudulent
representations by which they were induced to subscribe, took no steps
for nearly a year before the insolvency of the corporation to eliminate
their names as stockholders from the corporation's books because of
such fraud, they could not urge such defense thereafter against a receiv-
er's suit for unpaid calls on the stock.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 244;  Dec.
Dig. § 80.*]

6. CORPORATIONS (§ 562*)—STOCKHOLDERS—CALLS BY RECEIVER—TIME.
    Where a corporation's receiver extended the time for the payment of
calls on unpaid stock, so that the stockholders were given full 30 days'
notice required by statute, it was no objection that the receiver's first
notice required payment within 15 days.
    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 562.*]

7. ABATEMENT AND REVIVAL (§ 8*)—OTHER ACTION PENDING—GROUND OF AC-
TION.
    A pending action against stockholders to recover an assessment levied
by directors while the corporation was a going concern was not ground

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for abatement of an action by the corporation's receiver to recover an assessment levied by him to pay creditors.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 40; Dec. Dig. § 8.*]

8. ABATEMENT AND REVIVAL (§ 12*)—OTHER ACTION PENDING—STATE AND FEDERAL JURISDICTION.

Pendency of a suit in a state court is no ground for abatement of a suit on the same matter in a federal court.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 87; Dec. Dig. § 12.*

Pendency of action in state or federal court as ground for abatement of action in the other. see notes to Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 205; Barnsdall v. Waltemeyer, 73 C. C. A. 521.]

9. CORPORATIONS (§ 560*)—INSOLVENCY—RECEIVERS—CLAIMS—COMPROMISE.

A receiver of a corporation was authorized to compromise a claim of the corporation against an officer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2253; Dec. Dig. § 560.*]

10. CORPORATIONS (§ 228*)—INSOLVENCY—RECEIVERS—UNPAID CALLS—DEFENSES.

It was no defense to a stockholder's liability for calls levied by a receiver of the corporation to pay creditors that the receiver had made an unlawful compromise of a claim by the corporation against one of its officers.

[Ed. Note.—For other cases. see Corporations, Dec. Dig. § 228.*]

11. CORPORATIONS (§ 228*)—INSOLVENCY—RECEIVERS' CALLS—DEFENSES.

Impossibility of collection of calls made by a receiver against stockholders in a corporation as to some of such stockholders, or the collection in part under compromises made in good faith, was no defense at law to the liability of others on their subscription contracts.

[Ed. Note.—For other cases. see Corporations, Cent. Dig. §§ 874, 882; Dec. Dig. § 228.*]

12. CORPORATIONS (§ 228*)—INSOLVENCY—RECEIVER'S CALLS—DEFENSES.

Where the full amount of preferred stock of a corporation was subscribed, and there were 120,000 shares of such stock outstanding in the names of parties who originally subscribed at the time of the corporation's insolvency, it was no defense to the shareholders' liability for calls made by the receiver to pay creditors that the corporation had failed to enforce the liability of its president on an alleged subscription of 20,000 shares of preferred stock.

[Ed. Note.—For other cases. see Corporations, Cent. Dig. § 874; Dec. Dig. § 228.*]

13. CORPORATIONS (§ 88*)—STOCKHOLDERS—UNPAID CALLS—SETTLEMENT.

Evidence *held* insufficient to warrant a finding that a deceased stockholder had made a settlement of his liability for unpaid stock in his lifetime.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 360; Dec. Dig. § 88.*]

In Equity. Final hearing upon bill, answers, and proofs.
See, also, 156 Fed. 697.

Burr, Brown & Lloyd, for complainant.

Walter B. Saul, Albert E. Peterson, Morgan, Lewis & Bockius, Albert H. O'Brien, George P. Rich, Thomas Diehl, Ira J. Williams, Francis Shunk Brown, Alex Simpson, Jr., R. O. Moon, P. F. Rothermel, A.

---

S. L. Shields, George R. Jefferson, S. K. Louchheim, Frank R. Donahue, F. B. Bracken, Eugene Raymond, Walter George Smith, Wm. Rudolph Smith, Ferree, Brinton, Stockwell & Hamlin, Joseph T. Bunting, and Lincoln L. Eyre, for defendants.

HOLLAND, District Judge. This is a bill in equity against a large number of stockholders, resident in this district, seeking to collect from them an assessment of $2.50 a share, levied by Arthur K. Brown, receiver, in 1905, under the direction of the United States Circuit Court for the District of New Jersey, the court of primary jurisdiction. The American Alkali Company was a New Jersey corporation, of which the plaintiff was duly appointed receiver. The capitalization of the company, aside from the common stock, which was issued full-paid, was 120,000 shares of preferred stock, of the par value of $50 each, upon which $10 per share, or 20 per cent. of the par value thereof, was paid by the subscribers, and the certificates issued show no additional payments by the defendants. On September 12, 1901, the board of directors of the company levied a call for an additional $10 upon each share of the preferred stock, payable in four installments of $2.50 each. Certain of the holders of the preferred stock paid the first installment, but the defendants in this bill refused to pay the same, and on June 14, 1905, the plaintiff presented his petition to the United States Circuit Court for the District of New Jersey, praying the court to authorize an assessment of $2.50 a share upon the holders of the preferred stock, except those who had paid the first installment of the call made by the board of directors, and on August 31, 1905, the court made an order authorizing and instructing the plaintiff to levy such an assessment. Under this decree the assessment was made payable October 4, 1905, and subsequently, on March 5, 1906, the time for payment was extended to April 5, 1906. Against the preferred stockholders who refused to pay this assessment this bill was filed by direction of court. After the bill was filed, a number of the defendants paid the assessment. Decrees by default were entered against others, and quite a number filed their demurrers or answers to the bill. The demurrers, raising, among other questions, the jurisdiction of equity in the matter, were overruled by this court in an opinion which is reported in 156 Fed. 697, in the case of Brown v. Allebach et al., to which opinion we refer in answer to the same question of jurisdiction raised in the answers which were filed since the overruling of the demurrers. The bill was proceeded with according to law against all the original defendants named therein, until it resulted, as at present, that there is left for the determination of the court the question of the liability of 25 defendants, all of whom are registered as owners of the stock, and the court will not be obliged to consider any claim except those against registered owners.

The facts alleged in the plaintiff's bill are not denied by the defendants; neither, on the other hand, was there any denial with respect to the facts set forth in the various answers now before the court. That is to say, for the purposes of this case the plaintiff admits the matter set up in the answers of these 25 defendants who are contesting their liability, but claims that as a matter of law the answers are not suffi-

cient to entitle defendants to escape liability. The facts, as above stated, are equally applicable to the consideration of the answer of each of the defendants; but, in order that the various defenses may be understandingly considered, it will be necessary to state other facts applicable to the particular defense set up by the respective defendants. The same defenses are not made by all of the defendants; but I am satisfied, from an examination of the answers, that all the defenses made are properly and correctly summarized in the plaintiff's paper book. This summary, nine in number, will be followed and answered in the following order:

1. That the statute of limitations barred the suit. This defense is set up alone by the defendant Mr. Shepp. He claims that, as the 200 shares upon which this assessment is levied were registered in his name on the books of the company on August 26, 1899, and the decree of the court directing the receiver to collect the assessment in question was not made until more than six years thereafter, to wit, on August 31, 1905, a recovery is barred by the statute of limitations.

The law of the forum determines the time within which the action must be commenced. Wharton on Conflict of Laws, § 535. Whether the law of the forum or the law which determines the substantive rights of the parties governs as to the time when the cause of action accrues, for the purposes of the running of the statute of limitations of the forum, is a question not so well settled. Wharton on Conflict of Laws, § 535, holds that the law which determines the substantive rights of the parties governs as to the time when the cause of action accrues, and cites Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, 34 L. Ed. 262, in support of that proposition; but in Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986, the law of the forum fixed the time when the cause of action accrues, and it was not disturbed by the Supreme Court. But the question is not of importance in the present case, for the reason that the law of New Jersey, where the contract of subscription was made and where the substantive rights of the defendants are determined, is the same on this question as in Pennsylvania where the case was tried. The Supreme Court of New Jersey has held that the statute of limitations commences to run as to unpaid subscriptions to the stock of a corporation, which has become insolvent, after a call and assessment have been made for the amounts necessary to pay creditors. McCarter v. Ketcham, 72 N. J. Law, 247, 62 Atl. 693. And in Pennsylvania, where the question has been discussed probably more than in any other state, the law has been recently settled, in an elaborate opinion by Chief Justice Mitchell, that where a subscription to stock is not presently payable in full, but by its terms is to be payable from time to time as called for by the company, the statute of limitations does not begin to run until a call is made, and it is not necessary that such call should be made within six years from the date of the stock subscription. Cook v. Carpenter, 212 Pa. 165, 61 Atl. 799, 108 Am. St. Rep. 851, 1 L. R. A. (N. S.) 900, note.

In the case at bar, after the payment of $10 per share on the preferred stock, the subscribers are not liable, both by the terms of the charter and their contract of subscription, for any balance of their sub-

scription until an assessment or call is made on them. This assessment, upon which these defendants are called upon to pay, was made August 31, 1905, and it was not until that date that the statute of limitations began to run in their favor. As this suit for the recovery of the assessment was instituted on the 13th day of October, 1906, it is well within the six-year limitation.

2. That the defendants have never owned the stock registered in their names, but that the certificates belonged to third persons and for different reasons had been placed in the names of the defendants. This defense was set up by defendants Fridenberg, Gaw, Haines, Louchhein, Rattay, Snyder, and McQuillen, most of whom are brokers in whose names stock belonging to their clients had been placed, either because the brokers held the stock as collateral security for loans, or because of the necessity arising out of a sale on the stock exchange.

The certificate in some of these cases was placed in the name of the defendant without his knowledge. The strongest defense on this point is that of Gaw, who knew absolutely nothing as to the stock being placed in his name. He was a broker, and his customer, as was the latter's practice, placed the stock in Gaw's name, which, when sold, was brought to Gaw, who executed a power of attorney to enable the certificate to be sold at the stock exchange. He did not repudiate the issuing of the certificate in his name, nor did he see to it that it was changed after sale.

As to the others who raise this defense, some did not know of the certificate being placed in their names until afterwards; but in all of the cases there was nothing done to repudiate the issuing of the certificate in their names, nor to have it issued in the name of another after sale. They appeared as stockholders while an indebtedness was contracted causing insolvency, and, under the circumstances, we think it clear that the law will hold the registered owner liable to creditors, notwithstanding the fact that he is not now and never was the real owner, where he sanctions the placing of a certificate in his name by executing a power of attorney to sell the same, or by any other act. There is no doubt but that Gaw, in whose name the stock had been placed, could have repudiated the transaction if he had moved at once in the matter; but, instead of manifesting any objections to the certificate being placed in his name, he executed a power of attorney to enable the certificate to be sold on the Stock Exchange at Philadelphia, and thereafter did not see to it that the stock was placed in the name of some other party than himself. This, we think, is such a ratification of the transaction that he is liable, where the corporation has become insolvent and a receiver is levying an assessment for the payment of debts. His failure to immediately disavow the act places him in law in the position of one who has ratified the transaction so far as relates to creditors. McKim v. Glenn, 66 Md. 479, 8 Atl. 130; Cook on Corporations (5th and 6th Ed.) § 68; Phila. R. R. Co. v. Cowell, 28 Pa. 329, 70 Am. Dec. 128; McHose & Co. v. Wheeler, 45 Pa. 32.

Most of these defendants, however, while not the owners of the stock, knew that it had been placed in their names by customers of theirs and subsequently sold, in accordance with the rules of the Stock Exchange. Those who are registered on the books of the company

as the holders of stock are prima facie the real owners, to whom creditors are entitled to look for the payment of their claims in case of insolvency, and where stock has been placed in the names of parties, as here, with their knowledge, though it be for other persons, they are notwithstanding liable, as well as the real owner. The corporation is not required to investigate as to the real ownership of the stock at the time the certificate is issued, and creditors are entitled to the security afforded by the stock list in case the corporation becomes insolvent. In this case the contract of subscription and the certificate of incorporation contains the following:

"After payment of $10.00 * * * on the preferred stock, the subscribers thereto shall not be liable for any balance of their subscription, excepting upon such shares as shall stand of record on the books of the company in their names at the time when any subsequent assessment or calls are made; but the holders of such shares of record on the books of the company at that time, and they only, shall be liable for the same."

It has been expressly held that this provision is lawful, and renders the registered holder at the date of the assessment liable therefor. Brown, Receiver, v. Morton, 71 N. J. Law, 26, 58 Atl. 95; Campbell v. American Alkali Co., 125 Fed. 207, 61 C. C. A. 317. See, also, Cook on Corporations, § 249.

3. That the defendants had sold the stock prior to the assessment. Some of these defendants owned the stock. Others had it placed in their names for the purposes of sale. These defendants were registered owners at the time of the insolvency of the corporation, although the stock which appears in their names had been sold by them long prior to the time of the appointment of the receivers. But our attention has not been called to any case or text-book supporting the proposition that the mere sale of stock without transferring it upon the books of the company will relieve the registered owner in case of insolvency, especially in a case like this, where the contract of subscription and the charter expressly makes the registered owner at the time of the assessment liable; but, outside of the subscription and charter liability, the registered owner under the law is liable after the corporation becomes insolvent. The rule is that the transferror of stock is liable to corporate creditors on his statutory liability up to the time of a registry of the transfer to the same extent that he would be if no sale and transfer of the certificate had been made until the date of the registry. Cook on Corporations, § 260. He is not released from liability until the transfer is duly registered in the corporate books. Cook on Corporations, § 258. The exact point is decided in Hood v. McNaughton, 54 N. J. Law, 425, 24 Atl. 497, which was a suit by a receiver of an insolvent corporation against an original subscriber who had sold his stock, but the transfer had not been made on the books of the corporation. The original subscriber was held liable for the assessment on the stock, although he was not the owner at the time; and the same court, in Brown, Receiver, v. Morton, 71 N. J. Law, 26, 58 Atl. 95, in construing the liability of the registered owners under the clause in the charter, which was inserted in the contract of subscription, making only the registered owners liable for the payment of the assessment who appeared upon the registry at the time the assessment

was made, held it to be valid and as rendering the registered owner liable after a sale. This being a New Jersey corporation, the decisions of the court of that state fix the liability of the stockholders in the company, and it will be followed in this district. Merrimac Mining Co. v. Levy, 54 Pa. 227, 93 Am. Dec. 697. See, also, 23 Am. & Eng. Ency. of Law, 815.

4. That the defendants were induced to subscribe to the stock by fraudulent representations. This defense is set up by five of the defendants, all of whom, in their answer or in the evidence, show that each one had knowledge of the alleged fraud now set up as a defense as early as 1901, before the appointment of receivers for the corporation, which did not take place until the 9th day of September, 1902.

The alleged false and fraudulent representations now urged as a defense were made in the organization of the company, partly in the prospectus, which falsely represented that the patents purchased for the manufacture of caustic soda were basic patents, and also a false representation of the payment of $1,000,000 for these patents, when as a matter of fact only one-half that sum was paid for them, and the other $500,000 was paid to W. W. Gibbs, the promoter and president of the company, and, further, that the representation that Gibbs was to be a subscriber for 20,000 shares of stock was false. These defendants knew of this, as has been stated, shortly after September 12, 1901, when the board of directors of the company levied a call of $10 per share upon each share of the preferred stock, payable in four installments of $2.50 each, and upon receipt of notice of the first installment these defendants raised this defense of fraud. Some of them were sued on the call for the first $2.50 so levied by the board of directors and in an affidavit of defense to the suit set up this alleged fraud practiced upon them; but all of them permitted their names to continue as original subscribers on the books of the company, and did nothing to be relieved from such responsibility, for which they were liable. The board of directors notified these defendants of the assessment in October, 1901, and in some instances suits were instituted against them in the local courts in Philadelphia. Thus, with knowledge of the fraud, they permitted their names to remain as subscribers to the stock. The company continued in existence under the management of the corporate officers until September, 1902, when on the 9th day of September of the latter year a receiver was appointed. This receiver subsequently, on the 31st day of August, 1905, by order of the New Jersey court, levied an assessment of $2.50 per share, and notified the defendants to pay the same as registered owners upon the books of the company at the time of insolvency and appointment of a receiver and it was not until they again received notice of the assessment by the receiver in 1905 that they did anything to be relieved from liability on their subscription by reason of fraud. They are entirely too late now to interpose this defense against the collection of the assessment as against the rights of creditors whose claims, as the record show, arose subsequent to the incorporation and subscription of these defendants upon which the assessment is levied.

In England, where the question has been considered more frequently than here, and where there is an act requiring all stockholders to be

registered for the inspection of creditors and all parties interested, the rule as to the liability of the registered stockholders, in case where insolvency and winding-up proceedings are instituted, is much more strict than in this country, and where a rescission of a contract for the subscription of stock for fraud affects the rights of other shareholders merely, and the company is a solvent and going concern, proof of the fraud will relieve the subscriber; but where it affects the rights of creditors, and the company has stopped payment, and winding-up proceedings have commenced, the defense will not be entertained, and it is there held that where a shareholder instituted no proceeding of his own against the company, but pleaded misrepresentation to an action for calls, and shortly after a winding-up order was made, it was held that this did not amount to such an action on his part as to entitle him to relief. Ex parte Stevenson, 16 Weekly Reporter, 95.

In this country the courts have been somewhat more liberal in allowing the subscriber to defend upon the ground of fraud, even after insolvency and the appointment of a receiver, if he has been diligent in pursuing his right to rescission on this ground. The time in which he must institute his proceedings for relief varies according to the circumstances of each particular case; but the least neglect on the part of the subscriber will prevent a successful defense for fraud after the interest of creditors has intervened. Thompson on Corporations, §§ 1438–1456; Cook on Corporations, § 163. This defense would no doubt be good against the solvent corporation for calls, and in fact was sustained by the Circuit Court of Appeals here in Alkali Co. v. Salom, 131 Fed. 46, 65 C. C. A. 284, where the "call was by the corporation itself, then a solvent and going concern, and was for the purpose, as expressed in the resolution, of providing funds for the completion of the present works, the building of additional works, and providing working capital."

There was no question of the intervention of the rights of creditors, and the defense established entitled the subscriber to relief; but these defendants now raising this objection were cognizant of these facts nearly a year before the corporation became insolvent, and permitted their names to remain upon the registry as stockholders. Assuming that their subscription originally was induced by the two misstatements (1) that the patents acquired by the company were basic patents, and (2) that the $1,000,000 paid therefor was the inducement which led them to subscribe, they have failed, as required by law, to diligently and persistently pursue their rights to rescind after discovering the existence of the fraud, and they took no steps to rescind until long after the rights of creditors became fixed. Creditors of a corporation are entitled to the security for the payment of their claims to the unpaid portion of the capital stock for which stockholders appear liable upon the books of the company, and whether they have in fact investigated the extent of this liability before they have extended the credit to the corporation upon which their claim is based can make no difference. The general knowledge that such a liability exists creates for the corporation a credit which redounds to the benefit of the stockholders, and they cannot be permitted to escape the liability. As has been stated by an eminent jurist:

"A man must not play fast and loose. He must not say: 'I will abide by the company if successful, and I will leave the company if it fails.'" Thompson on Corporations, § 1440.

These defendants being original subscribers, and the record showing that debts aggregating a large amount were due and owing by the company at the time of the receivership, and which were, of course, contracted after the contract of subscription was signed by the defendants, and in contemplation of law on the faith of the stockholders' liability, cannot escape payment of the assessment now because of the fraudulent representations appearing in the prospectus, of which they had knowledge for nearly a year before the insolvency of the corporation, and took no steps to rescind or repudiate their contract of subscription, but permitted their names to remain upon the books as registered owners of stock. The following authorities support this proposition: Cook on Corporations, §§ 163, 164; Thompson on Corporations, §§ 1438–1456; Howard, Receiver, v. Turner, 155 Pa. 349, 26 Atl. 753, 35 Am. St. Rep. 883; Hilliard v. Woodcarving Co., 173 Pa. 1, 34 Atl. 231; Ins. Co. v. Smith, 1 Pa. Super. Ct. 470; Acetylene Co. v. Smith, 10 Pa. Super. Ct. 61. In the United States courts, where suits have been instituted to recover the statutory liability of stockholders of a bank, the same rule has been insisted upon. Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 822; Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218.

5. That the call made by the receiver did not give the 30 days' notice for payment prescribed by the New Jersey statutes.

The assessment by the receiver, in accordance with the decree of the court, was made on August 31st. Copies of the decree, together with notice of the call made thereunder, were sent to the preferred stockholders on September 19, 1905, and the stockholders were requested to pay within 15 days. The objection was raised that the New Jersey corporation law required the receiver to give 30 days' notice of the assessment before he could insist upon payment of the same by the stockholders. He thereupon promptly, on March 5, 1906, notified the preferred stockholders that he extended the time for payment of the assessment to April 5, 1906, thus giving the stockholders the full 30 days' notice prescribed by the New Jersey statutes in the case of assessments levied by a board of directors.

6. That suits at law for the collection of the assessment levied by the board of directors in 1901 were pending at the date of the bill filed.

Actions at law were pending against a number of defendants for this assessment in the courts of common pleas for the county of Philadelphia to recover the assessment authorized by the board of directors in September, 1901; but this can be no defense for two reasons: (1) Because they are not based upon the same cause of action; and (2) because they are actions at law brought in a state court. The cause of action is an assessment levied by directors of a solvent, going concern instituted in the state court on the law side. The cause of action upon which the present bill is filed against the defendants is an assessment levied by the receiver of the same corporation, after it became insolvent, for the purpose of paying creditors, and is instituted in the United States courts on the equity side, against which bill

the pending suit at law in the state court for a different assessment will not avail as a defense; and (2) the pendency of a suit in a state court is no ground for a plea of abatement to a suit upon the same matter in a federal court. 1 Cyc. 38; Insurance Co. v. Brune's Assignee, 96 U. S. 593, 24 L. Ed. 737; Gordon v. Gilfoil, 99 U. S. 178, 25 L. Ed. 383.

7. That the receiver had settled a claim against Gibbs for too small a sum.

The company, prior to the receivership, had brought suit in equity against Gibbs, former president, to recover large sums of money, amounting to several hundred thousand dollars. Testimony was taken in the case, and Gibbs, after the receivership, offered $50,000 in settlement, which offer was accepted by the receiver; but it subsequently appeared that Gibbs was unable to pay this amount, and the receiver sold the claim for $25,000. The defense is that more might have been made; but there is no testimony in support of the averment, and, of course, the defense necessarily fails, unless the mere fact of the settlement for this amount is a defense, which, of course, it is not, as a receiver is authorized to make a lawful compromise in matters of this kind, and even if a settlement made by him be unlawful, while he might be personally liable in damages, yet it would not follow that the stockholder, who is liable on his subscription, should be relieved from liability. Cook on Corporations, § 191; Bennett v. Glenn, 55 Fed. 956, 5 C. C. A. 353. The impossibility of collection as to some subscribers, or collection in part under compromises made in good faith, could not furnish a defense at law to the liability of others on their contract of subscription. Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885.

8. The defense that the company settled with other customers for too small a sum is answered by what we have said above, and the objection that the company failed to enforce the liability of Gibbs for an alleged subscription of 20,000 shares of the preferred stock cannot be set up as a defense, because the full amount of the preferred stock was subscribed, and there are 120,000 shares of the preferred stock outstanding in the names of parties who originally subscribed.

9. The defense is set up alone by the executors of Joseph F. Sinnott, deceased, that he settled with the company; but the answer and the testimony submitted convince me there was no such a settlement effected as would relieve Sinnott from liability on the 1,000 shares. He was a subscriber for 2,000 shares, and paid $2,500, which was exactly the first installment on the assessment made by the board of directors on September 12, 1901, on 1,000 shares. The decree of the New Jersey court authorizing the receiver to make an assessment, for which this suit is now instituted, exempted these stockholders who had paid the first installment of $2.50 per share called by the directors in September, 1901. As Sinnott paid that amount on 1,000 shares, he, of course, is not now called upon by the receiver to pay, except upon certificates 141 and 142, aggregating 1,000 shares. These two still stand in his name upon the books of the company as an original subscriber, and the evidence fails to show that he was relieved of his responsibility as a subscriber.

Under the law applicable to the facts stated in the answers of those who have defended, giving them their full force and drawing every reasonable inference in their favor, none of the defenses raised can be sustained. Counsel for the receiver will draw a decree in accordance with this opinion, and submit the same for the consideration of the court.